436 So.2d 213 (1983)
Nicholis V. KLONIS and Mary E. Klonis, His Wife, for the Use and Benefit of Consolidated American Insurance Co., Appellants,
v.
William R. ARMSTRONG, D/B/a Armstrong Insurance Management Co., and Employers Reinsurance Corp., Appellees.
No. AO-172.
District Court of Appeal of Florida, First District.
June 21, 1983.
Rehearing Denied August 24, 1983.
*214 Douglass E. Myers, Jr., of Smith & Myers, Jacksonville, for appellant.
Daniel C. Shaughnessy, of Cowles, Coker, Myers, Schickel & Pierce, P.A., Jacksonville, for appellees.
ZEHMER, Judge.
After careful review, we affirm the order dismissing with prejudice a four-count complaint filed by appellant Consolidated American Insurance Co. (Consolidated) against appellee William R. Armstrong and his liability insurer.
The essential facts alleged in the complaint are not complicated. On November 12, 1977, the Klonis residence was burglarized and personal property valued at $98,000 stolen. Nicholas Klonis and Mary Klonis, his wife (hereafter Klonis), through their insurance agent, Armstrong, had previously obtained a homeowner's insurance policy from Consolidated covering the loss by theft of unscheduled personal property in the residence to the maximum amount of $40,000. A clause in that policy provided that this coverage "shall apply as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy." Sometime after the Consolidated policy was issued, but prior to the burglary, Armstrong orally agreed with Klonis to secure a second policy with Lloyd's of London insuring specifically described articles of personal property in the Klonis residence having a total appraisal value of $128,000. Armstrong obtained the Lloyd's policy for Klonis, but it was cancelled after the burglary retroactively to the date of inception because Armstrong had made material misrepresentations on the policy application without the knowledge and consent of Klonis. Consolidated paid $40,000 to Klonis on his claim for the theft under the unscheduled personal property coverage and in return secured a release and subrogation receipt from Klonis. Klonis also sued Armstrong for the amount of the uncovered loss, settling with him for the $58,000 difference. Consolidated attempted to join that litigation as a real party in interest to recover from Armstrong the $40,000 it had paid, asserting the following *215 four theories of action in separate counts:
1. Consolidated is contractually subrogated to the cause of action by Klonis against Armstrong for negligence (Count I);
2. Consolidated is contractually subrogated to the cause of action by Klonis against Armstrong for breach of an oral contract (Count II);
3. Consolidated is entitled to recover from Armstrong on a theory of equitable subrogation (Count III); and
4. Consolidated has a direct cause of action against Armstrong for negligence in failing to obtain the valid coverage from Lloyd's (Count IV).
It is not contended by any party that Consolidated's policy required either Klonis or Armstrong to obtain described articles insurance as primary coverage or that Consolidated had a legal right to insist that either of them maintain such underlying coverage if it was obtained. The Lloyd's policy, even if obtained, admittedly could have been cancelled by Armstrong with Klonis's consent for any reason at any time prior to the theft without creating any liability to Consolidated. Consolidated was paid a stated premium for the unscheduled articles coverage that was not to be reduced under any policy provisions in the event its insured obtained the primary scheduled articles insurance referred to in Consolidated's policy.
Consolidated's four-count second amended complaint was dismissed, with leave to amend, for failure to state a cause of action. When Consolidated elected to stand on its allegations and not to amend, the action was dismissed with prejudice.
The first point urged by Consolidated is that in accordance with certain policy provisions and the release and subrogation receipt agreement[1] it was contractually subrogated to causes of action by Klonis against Armstrong for negligence and for breach of contract arising from Armstrong's breach of the oral agreement to obtain the Lloyd's policy. We readily agree that under those provisions Consolidated became contractually subrogated to causes of action held by Klonis against any persons liable "for the loss" paid by Consolidated. Obviously Consolidated, as subrogee, could sue the burglars or persons fencing the stolen goods if it could locate them. But whether Consolidated could also sue the insurance agent, Armstrong, "for the loss" depends upon the nature and scope of any cause of action Klonis had against Armstrong.
Consolidated contends that, had the Lloyd's policy been in effect, the $128,000 coverage would have exceeded the amount of the total loss and, further, that under Consolidated's excess insurance clause, which Florida courts have held enforceable, Lloyd's would have been responsible for the whole loss and Consolidated would not have been responsible for any portion thereof. Thus, Consolidated concludes, Armstrong's failure to secure valid insurance from Lloyd's caused Armstrong to be liable to Klonis and to Consolidated, as subrogee, for the entire $98,000 loss, without regard to the existence of Consolidated's $40,000 coverage because that was merely "excess" insurance.
Armstrong, on the other hand, contends that under the facts alleged, the "excess" insurance clause in the Consolidated policy did not create any contractual or legal duty that he or Klonis purchase and maintain any amount of primary scheduled personal property coverage; that he undertook by oral agreement to provide insurance coverage *216 which would fully protect Klonis against theft of all personal property, scheduled and unscheduled, including the $98,000 loss sustained in the burglary; that he had previously procured $40,000 of coverage for Klonis from Consolidated that covered part of the loss and was valid and collectible; that such amount was paid to Klonis; that the only damages Klonis could recover from Armstrong for failure to obtain the specified coverage was the amount of any uninsured loss, i.e., the $58,000 difference between the total $98,000 loss and the $40,000 coverage; and that when Armstrong settled and paid the $58,000 claim to Klonis, there was no further liability on Armstrong's part to Klonis or, thus, to Consolidated by way of subrogation.
Consolidated, suing as a subrogated party, can enforce only those rights of action that Klonis has against Armstrong. 30 Fla.Jur., Subrogation, § 21. Both parties assume Klonis has a cause of action against Armstrong, but neither cites any legal authority defining the extent of Armstrong's liability, although that is the pivotal assumption about which both parties base their respective arguments. Hence, we must first address this issue in order to decide the case.
It is well settled in this state that where an insurance agent or broker undertakes to obtain insurance coverage for another person and fails to do so, he may be held liable for resulting damages to that person for breach of contract or negligence. E.g., First National Ins. Agency v. Leesburg Transfer & Storage, 139 So.2d 476 (Fla. 2d DCA 1962); Cat 'n Fiddle v. Century Ins. Co., 200 So.2d 208 (Fla. 3d DCA 1967), vacated in part on other grounds, 213 So.2d 701 (Fla. 1968); Caplan v. LaChance, 219 So.2d 89 (Fla. 3d DCA 1969); deMarlor v. Foley Carter Ins. Co., 386 So.2d 22 (Fla. 2d DCA 1980); Duncanson v. Service First, Inc., 157 So.2d 696 (Fla. 3d DCA 1963); Sheridan v. Greenberg, 391 So.2d 234 (Fla. 3d DCA 1981). The damages recoverable from the agent or broker would ordinarily be reduced to the extent that the latter did effectuate some insurance coverage of the claimed loss. See Durbin Paper Stock Co. v. Watson-David Ins. Co., 167 So.2d 34 (Fla. 3d DCA 1964); Cat 'n Fiddle, Inc. v. Century Ins. Co., supra. Damages to the intended insured would usually be "calculated by simply comparing what he would have recovered had the premises been fully insured, with his actual net recovery." de Marlor v. Foley Carter Ins. Co., 386 So.2d 22, 24 (Fla. 2d DCA 1980).
In the instant case, the extent of Armstrong's liability to Klonis was the total loss ($98,000) less the amount of insurance coverage already obtained by Armstrong ($40,000) through Consolidated. Consolidated's "excess insurance" clause never took effect because there was not available to Klonis "other valid and collectible insurance which would apply in the absence of this policy." Accordingly, after Klonis received the $40,000 from Consolidated and Armstrong paid Klonis the $58,000 difference, Klonis had no surviving right of action to pass by contractual subrogation to Consolidated. The trial court was correct in dismissing Counts I and II.
As its second point, Consolidated argues that even if not entitled to contractual subrogation, it was nevertheless entitled to equitable subrogation against Armstrong. Consolidated cites a number of Florida decisions recognizing the doctrine of equitable subrogation and relies principally upon Rebozo v. Royal Indemnity Co., 369 So.2d 644 (Fla. 3d DCA 1979), cert. den., 379 So.2d 209 (Fla. 1979). However, this argument fails for the same reason as the previous one  Klonis had no right of action against Armstrong for the $40,000 insurance proceeds to which Consolidated could become equitably subrogated. In Rebozo, unlike this case, an undisputed cause of action was held by the subrogor to be passed to the subrogee. For this reason, Rebozo and the other equitable subrogation cases cited are inapplicable.
Consolidated also argues that Armstrong became in effect a primary insurance carrier by virtue of his unfulfilled promise to secure the primary insurance coverage and, therefore, became liable to *217 Consolidated based upon equitable subrogation principles, citing Ranger Ins. Co. v. Travelers Indemnity Co., 389 So.2d 272 (Fla. 1st DCA 1980), as directly on point. Ranger held that an excess insurance carrier may sue the primary insurance carrier for equitable subrogation where the primary carrier is guilty of bad faith in refusing to settle a claim on the theory that the primary carrier owes the same duty of care to the excess carrier as it owed to the insured. But this argument is likewise based upon an erroneous premise, i.e., that Armstrong's legal obligation to Klonis was equivalent to the insurance contract made by a primary insurance carrier. Armstrong's liability was not coextensive with the Lloyd's policy originally issued and later cancelled. On the contrary, Armstrong's liability was for damages resulting from his negligence or breach of contract in failing to obtain insurance coverage. As discussed above, Armstrong was responsible only for any uninsured portion of the loss by theft. The trial court was correct in dismissing Count III.
For its third and final point, Consolidated argues that Count IV states a cause of action by Consolidated directly against Armstrong that is not predicated upon a theory of subrogation but, rather, is seeking recovery in negligence because "Armstrong owed a duty to Consolidated to non-negligently perform his contract with Consolidated's insured [Klonis] to procure the underlying personal articles property insurance coverage from Lloyd's." But Consolidated's argument, as presented, again assumes the existence of such a legal duty and concentrates on questions and legal authorities concerned with the proposition, stated as its Point III (which we quote):
[Count IV] asserts that the loss to Consolidated was a foreseeable consequence of the insurance agent's (Armstrong's) negligence in placing underlying coverage  the agent being charged with knowledge of the terms of an insurance contract (Consolidated's policy with valid `excess' clause) placed by that same agent; the issue of foreseeability/proximate cause is a fact question for the jury, thus this issue was impermissibly foreclosed on the pleadings.
Appellee counters with various arguments, analogizing this claim to third-party beneficiary principles, and urging lack of privity between Consolidated and Armstrong.
However, we need not address these various arguments because Consolidated again assumes the existence of a legal duty without having alleged ultimate facts essential to establish that a legal duty was owed to Consolidated by Armstrong. Consolidated did not allege that it relied upon Armstrong's undertaking to obtain the scheduled personal articles insurance. At oral argument, in response to questions from the court, counsel for Consolidated candidly admitted that Consolidated had not relied in any way on Armstrong's undertaking to obtain the additional insurance, and insisted only that Armstrong is liable because he knew or should have known that procurement of the Lloyd's policy would benefit Consolidated under its excess insurance clause and it was foreseeable that Armstrong's negligent failure to obtain such insurance would harm Consolidated. But as to Consolidated, Armstrong's alleged undertaking was entirely gratuitous, and a legal duty would run to Consolidated only if it had relied upon Armstrong's gratuitous undertaking. The applicable rule was stated in Sheridan v. Greenberg, 391 So.2d 234, 236 (Fla. 3d DCA 1981):
An insurance agent who voluntarily, without consideration or expectation of remuneration or reward, agrees to procure a policy is liable for damages that result from his failure to do so. Reed Mfg. Co. v. Wurts, 187 Ill. App. 378 (1914). Reliance by the putative insured on the insurance agent's undertaking, even if that undertaking is gratuitous, is sufficient to trigger a duty upon the agent to exercise the reasonable skill and care to obtain the appropriate coverage. Colonial Savings Association v. Taylor, 544 S.W.2d 116 (Tex. 1976); Graddon v. Knight, 138 Cal. App.2d 577, 292 P.2d 632 (1956); Lusk-Harbison-Jones v. Universal Credit Co., 164 Miss. 693, 145 So. 623 (1933); Siegel v. Spear & Co., 234 N.Y. *218 479, 138 N.E. 414 (1923), Couch on Insurance 2d, § 25.33 (1960). See also Restatement (Second) of Torts, Section 323 (1965) (`one who undertakes, gratuitously or for consideration, to render service to another which he should recognize as necessary for the protection of the other's person' is subject to liability for harm suffered because of the other's reliance on the undertaking.) (Footnotes omitted)
In the Sheridan case, there was evidence of reliance, which was held to trigger a legal duty. Here, there was no reliance and consequently no legal duty. Count IV was likewise properly dismissed.
The judgment below is AFFIRMED.
BOOTH and LARRY G. SMITH, JJ., concur.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Appellant Consolidated American Insurance Co. [Consolidated] contends in its motion for rehearing and/or clarification of our opinion filed June 21, 1983, that we overlooked the controlling effect of Friedfeld v. Royal Indemnity Co., 167 So.2d 586 (Fla. 3d DCA 1964) on this case. Consolidated urges that Friedfeld supports the proposition that the Lloyd's of London insurance policy acquired on behalf of appellant Klonis was in effect at the time of the robbery and that, as a result of such valid insurance being in effect, the policy issued by Consolidated did not cover any of Klonis's loss because its coverage was merely excess over the "valid and collectible insurance" acquired from Lloyd's. We do not agree.
In Friedfeld, the insured had obtained two comprehensive personal liability insurance policies, both of which contained a clause stating that the coverage of the policy would be limited on a pro rata basis if the insured had other "valid and collectible insurance" in existence at the time of a loss. A covered claim arose out of an accident on the premises, and the insured failed to furnish timely notice of the claim to one of his insurance companies. As a result of this failure, that insurance policy became uncollectible with respect to the loss accruing on the date of the accident. The insured attempted to collect the entire amount of the loss under the other policy, arguing that the pro rata clause of the policy should not be applicable since he no longer had other "valid and collectible" insurance to cover the loss. The court properly held, however, that the determination of whether the insured had other valid and collectible insurance should be made as of the time of the accident; and since both policies were collectible at the time of the accident, the pro rata clause was applicable and the insured could not recover his whole loss from one company.
Consolidated's argument that Friedfeld controls in this case is incorrect. The underlying facts in Friedfeld are distinguishable from the facts in this case. In Friedfeld, the failure of the insured to notify the company of the accident made the policy "uncollectible" at the time of such failure, i.e., after the loss occurred; the policy was not voided or made uncollectible retroactive to its inception. Except for the insured's failure to give the required notice after the loss, the policy was valid and collectible as of the time of the accident. In the instant case, coverage was denied Klonis on his Lloyd's of London policy because the material misrepresentations in the application for insurance were submitted before the loss occurred and operated to void the policy retroactive to its inception. As a consequence, Klonis never had any valid and collectible insurance under the Lloyd's policy which he could lose by reason of acts occurring after the loss. Our decision in this case is entirely consistent with Friedfeld, as the court in that case expressly acknowledged that "the pro rata clause, in referring to `valid and collectible' insurance is directed to a policy which is legal and valid, as distinguished from one which is invalid, such as for fraud ... ." [Emphasis added.] 167 So.2d at 587.
Consolidated's remaining contentions are likewise without merit. The motion for rehearing is DENIED.
BOOTH and LARRY G. SMITH, JJ., concur.
NOTES
[1] The policy provision reads in part:

"Subrogation... . This company may require from the insured an assignment of all rights of recovery against any party for loss to the extent that payment therefor is made by this company."
The Subrogation Receipt Agreement signed by the Klonises reads in part:
"In consideration of and to the extent of said payment the undersigned hereby subrogates said company to all of the rights, claims and interest which the undersigned may have against any party . .. liable for the loss mentioned above and authorizes the said company to sue, compromise or settle in the undersigned's name or otherwise all such claims."