436 So.2d 976 (1983)
ALLSTATE INSURANCE COMPANY, As Subrogee of Irwin Siegel, Appellant,
v.
METROPOLITAN DADE COUNTY, Appellee.
No. 82-478.
District Court of Appeal of Florida, Third District.
August 2, 1983.
Rehearing Denied September 21, 1983.
*977 Bedford & Whitelock and Jack Whitelock, Jr., Miami, for appellant.
Robert A. Ginsburg, County Atty., and Kenneth B. Drucker and Roy Wood, Asst. County Attys., for appellee.
Before HENDRY, HUBBART and FERGUSON, JJ.
HENDRY, Judge.
Allstate Insurance Company appeals from a final summary judgment entered in favor of appellee Metropolitan Dade County on Allstate's subrogation claim against the county. For reasons more fully developed below, we affirm the trial court's decision.
The facts need be stated only briefly. On May 3, 1975, an automobile insured by appellant was involved in an accident with a bus owned and operated by appellee. By the terms of the insurance contract, the insured's claim under his uninsured motorist benefits went to arbitration. On June 6, 1978, an award in the amount of $156,000 was entered in favor of the insured. Appellant paid that award on October 6, 1978. Under the terms of the contract, appellant was then subrogated to the rights of the insured. Appellant did not file a complaint on its subrogation claim against appellee until September 24, 1980. Under section 768.28(12), Florida Statutes (1975), an action against a governmental agency must be brought within four years of the date the statute of limitations begins to run. The only issue on appeal is whether the trial court erred in finding that in a subrogation claim, the statute of limitations begins to run on the date of the accident and that, therefore, summary judgment was appropriate since appellant did not file its complaint until after the statute of limitations period had already ended.
Appellant repeatedly characterizes this action as a "subrogated claim for indemnity". By doing so, it attempts to blur the distinction between subrogation and indemnification, *978 thus merging the two and treating all claims for reimbursement as if they were indemnity claims. These efforts are understandable: appellant seeks to take advantage of the well established principle that in indemnification actions, the statute of limitations does not begin to run until the indemnitee pays on an obligation. Employers' Fire Insurance Co. v. Continental Insurance Co., 326 So.2d 177 (Fla. 1976); Castle Construction Co. v. Huttig Sash & Door Co., 425 So.2d 573 (Fla.2d DCA 1982); Fireman's Fund Insurance Co. v. Rojas, 409 So.2d 1166 (Fla.3d DCA 1982); Mims Crane Service, Inc. v. Insley Manufacturing Corp., 226 So.2d 836 (Fla.2d DCA 1969). This focus on the common set elements of both doctrines, that both involve parties seeking reimbursement for monies paid which should have been paid by another, cannot be used to shift attention away from the true distinction; that is, subrogation and indemnification are different because the rights involved are different.
In principle, there is a clear distinction between subrogation rights and indemnification rights. Subrogation is designed to afford relief when one is required to pay a legal obligation which ought to be met, either wholly or partially, by another. Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla. 1980); American Home Assurance Co. v. City of Opa Locka, 368 So.2d 416 (Fla.3d DCA 1979), and cases cited therein. Subrogation rights place a party, like appellant in this case, in the legal position of one who has been paid money because of the acts of a third party. Thus, the subrogee "stands in the shoes" of the subrogor and is entitled to all of the rights of its subrogor, Klonis v. Armstrong, 436 So.2d 213 (1983), but also suffers all of the liabilities to which the subrogor would be subject. Holyoke Mutual Insurance Co. v. Concrete Equipment, Inc., 394 So.2d 193 (Fla.3d DCA), rev. denied, 402 So.2d 609 (Fla. 1981); Jones v. Bradley, 366 So.2d 1266 (Fla. 4th DCA 1979). In subrogation, the subrogee, now in the same posture as the plaintiff/subrogor, acquires all rights as against the defendant/wrongdoer and is thus able to bring an action against that party to recover the monies paid.
Indemnity, on the other hand, shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the cost because it was the latter's wrongdoing for which the former is held liable. Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979). Indemnification rights derive from the relationship between a party like the appellant and the party causing the injury. Given the requisite relationship, and assuming that the party seeking indemnification was not at all responsible for the injury, the injuring party becomes liable to the payor.
Both subrogation and indemnification may be either contractual or equitable in origin. The two doctrines remain distinct when they have their source in contract. Contractual subrogation presupposes a contract between the subrogor and the subrogee; that is, between the injured and the paying parties. Contractual indemnification requires a contract between the paying party and the injuring party. In equity, however, the distinction between subrogation and indemnification may blur. A court may emphasize either or both of the doctrines "when necessary to bring about equitable adjustment of a claim founded on right and natural justice". Rebozo v. Royal Indemnity Co., 369 So.2d 644, 646 (Fla.3d DCA), cert. denied, 379 So.2d 209 (Fla. 1979) (equitable subrogation). A court recognizing equitable rights may, therefore, refer to subrogation and indemnification interchangeably. See, e.g., Employers' Fire Insurance Co. v. Continental Insurance Co., 326 So.2d at 180 and n. 5. See also Klonis v. Armstrong, supra (discussion of contractual and equitable subrogation).
The question of when a statute of limitations begins to run depends on whether the subrogation or indemnification right is equitable or contractual in nature. A contractual right to indemnification cannot vest until payment is made. As a result, the *979 statute of limitation does not begin to run until payment is made. See cases cited supra. The same is true with equitable subrogation and indemnification. Employers' Fire Insurance Co., supra. The court may find that some occurrence has tolled the statute. Government Employees Insurance Co. v. Wheelus, 319 So.2d 181 (Fla. 4th DCA 1975). Contractual subrogation rights, however, by their terms, refer to a transfer or substitution of the rights and liabilities of the injured party to the paying party. Klonis v. Armstrong, supra; Holyoke Mutual Insurance Co., supra; Jones v. Bradley, supra. In addition, subrogation contracts frequently grant the subrogee the means of insuring that the subrogor will protect the subrogee's rights, even in advance of payment. Not surprisingly, therefore, courts have traditionally held that in contractual subrogation actions, the statute of limitations runs from the date of the injury to the original "rightsholder" and not from the date of payment by the subrogee. These traditional rules are stated in Don Reid Ford, Inc. v. Feldman, 421 So.2d 184 (Fla. 5th DCA 1982):
Where insurers have brought actions for subrogation to recover, for injuries or damage for which the insurer has paid its insured, against a third party whose alleged tortious conduct caused the injuries or damage, such insurers have frequently attempted to have applied to the subrogation actions the same time of accrual as that applied to indemnity actions, but courts generally have adhered to the view that the statute of limitations begins to run on a subrogated insurer's action against a third-party tortfeasor at the same time that the statute of limitations would begin to run on an action by the insured, or his personal representative in the event of the death of the insured, against the third-party tortfeasor. A rationale offered in support of this view has been that a subrogated insurer stands in the shoes of its insured, taking no rights other than those that the insured had, and at the same time being subject to all defenses which the third-party tortfeasor might assert against the insured.
Id. at 185-186. In the above quoted case, a subrogated action for damages for legal malpractice, the court held that the statute of limitations began to run on the date the default judgment was entered against Don Reid Ford, and not on the date the insurance company paid it for the damages suffered by the attorney's malpractice.
This case involves a straightforward contractual subrogation claim. The insured made a claim for uninsured motorist benefits, after a lengthy period of time appellant paid those benefits, and became subrogated to the rights of its insured to file suit against the county for recovery of the monies it paid its insured. In addition, the insurance policy itself also included terms designed to insure that the rights of the insurer would not be meaningless by the time of any payment; that is, that appellant could require its insured to file a lawsuit against the county in order to preserve his right to damages for the injuries suffered:
4. Assistance and Cooperation of the Insured. After notice of claim under this coverage, Allstate may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury... .
Appellant relies heavily on Fireman's Fund Insurance Co. v. Rojas, 409 So.2d 1166 (Fla.3d DCA 1982). At first appearance, that case would seem to control the disposition of the case sub judice. A close reading of the record in Fireman's Fund, however, reveals that the claim, from the language of the complaint to the briefs on appeal, was always treated as being one for indemnification because, as Fireman's Fund argued in its appellate briefs, the provisions of the Insurance Code then extant required that its claim be for indemnification and not for subrogation. Secondly, Fireman's Fund paid its insured promptly without waiting *980 for the outcome of the lengthy litigation[1] between Mrs. Rojas and her insurance carrier. Additionally, Fireman's Fund filed its complaint, albeit on the very last day, within the four year limitation period which began to run on the date of the accident. Finally, there is nothing in the record which suggests that there was a provision in the policy by which Fireman's Fund could require its insured to file suit against Mrs. Rojas in order to protect Fireman's Fund's interests.
In the case sub judice, appellant filed suit against appellee asserting its right to reimbursement as subrogee of its insured. Only on appeal has appellant tried to characterize its claim as being one for indemnification.[2] Secondly, appellant could have required its insured to file suit against appellee in order to protect appellant's interests. Appellant did not do this, however, nor did it file suit in its own name until well after the statute of limitations had run. Finally, it took over three years for appellant's insured to obtain an arbitration award in its favor, and an additional four months after that before appellant paid the judgment.
The latter two points warrant further discussion. Appellant had two courses of conduct it could have chosen: to require the insured to file suit against appellee in order to preserve its subrogation rights, or to pay the insured and then file suit, either in its own name or for the use and benefit of its insured, Holyoke Mutual Insurance v. Concrete Equipment, supra, since the right to subrogation does not arise until the subrogee first pays the claim. Quinones v. Florida Farm Bureau Mutual Insurance Co., 366 So.2d 854 (Fla.3d DCA 1979); Indiana Insurance Co. v. Collins, 359 So.2d 916 (Fla.3d DCA 1978). Appellant chose to wait and to allow its obligation to pay to be determined by arbitration. Eleven months remained between the date of the arbitration decision and the date the statute of limitations ran out. That is, eleven months remained between the date appellant's liability became fixed and the date the statute of limitations terminated, and appellant did nothing to protect itself or to preserve its rights as against appellee. In such a case, even if the doctrine of statute of limitations did not apply, the equitable doctrine of laches would.
By adopting the position that the statute of limitations begins to run on the date the injury occurs, we support two important policy considerations: One, this position encourages the paying party to determine promptly what its obligations are and to meet those obligations quickly so that it may take advantage of its right to subrogation before the statute of limitations ends. This benefits the injured party. Second, it fixes a maximum time period in which the tortfeasor could expect to be sued by either the injured party directly or by his insurance company.
For the above stated reasons, we hold that in contractual subrogation, the statute of limitations begins to run on the date the injury occurs and not on the date the subrogee makes its payment to the subrogor.
Affirmed.
FERGUSON, Judge (specially concurring).
The majority opinion is an excellent discussion of subrogation and indemnification and I agree to affirm. I write only to express disapproval of the attempt to distinguish and salvage our earlier opinion in Fireman's Fund Insurance Co. v. Rojas, 409 So.2d 1166 (Fla.3d DCA 1982). Rojas blurred the differences between indemnification and subrogation to an incorrect conclusion and should be revisited solely for the purpose of giving it a decent burial. That *981 was a classic contractual subrogation case. The accident occurred on July 16, 1975 and the complaint for subrogation was not filed until July 17, 1979  clearly outside the four year statute of limitations. The trial court's judgment for Rojas, entered on the pleadings, should have been affirmed.
NOTES
[1] Fidelity & Casualty Co. of New York v. Fonseca, 358 So.2d 569 (Fla.3d DCA), cert. denied, 365 So.2d 711 (Fla. 1978).
[2] It must be emphasized that we are not concerned with questions of semantics. Fireman's Fund dealt with a situation where what looked to be subrogation had a colorable statutory basis for being treated as indemnification. Again, it is the nature of the rights asserted which creates the difference between subrogation and indemnification. Courts will focus on those rights rather than on whatever labels the parties choose to employ.