538 So.2d 482 (1989)
McKenzie TANK LINES, Inc., a Florida Corporation, Appellant
v.
EMPIRE GAS Corporation, a Missouri Corporation, and Empiregas, Inc., of Jay, a Florida Corporation, Appellees.
No. BS-87.
District Court of Appeal of Florida, First District.
January 27, 1989.
Robert D. Bell of Bell, Hahn & Schuster, Pensacola, for appellant.
Larry Hill of Moore, Hill & Westmoreland, P.A., Pensacola, for appellees.
SMITH, Chief Judge.
Appellant, McKenzie Tank Lines, Inc. (McKenzie), appeals a judgment entered against McKenzie and Florida Insurance Guaranty Association (FIGA). We affirm.
McKenzie and Empire Gas Corporation (Empire) were named as codefendants in a negligence suit stemming from an explosion at a facility owned by Empire. The explosion occurred as a result of negligence of one of McKenzie's employees while he was in the process of unloading a tank of LP gas from McKenzie's tank truck into a storage tank owned by Empire, located at Empire's plant in Jay, Florida.
*483 McKenzie and Empire filed cross-claims against each other, both alleging that the negligence of the other caused the explosion. Empire also sought a judgment against McKenzie for damages to its business and property caused by the explosion. Before trial, Empire settled with the multiple plaintiffs for $464,205.00 in exchange for a release of liability for Empire and McKenzie. After the settlements, the several plaintiffs dismissed their complaints. Thereafter, McKenzie and Empire went to trial before a jury on the issue of liability between them, and McKenzie was found to be one hundred percent liable. A judgment was entered against McKenzie in favor of Empire for $109,000.00, representing the amount of property and business damages suffered by Empire in the explosion. On appeal of that judgment, this court affirmed, McKenzie Tank Lines, Inc. v. Empire Gas Corp., 487 So.2d 1174 (Fla. 1st DCA 1986). Subsequently, Empire filed a motion for contribution seeking recovery from McKenzie of the amounts paid in settlement to the plaintiffs in the underlying action. It is from final judgment rendered in the contribution action that this appeal is taken.
During the pendency of the contribution action, McKenzie's insurance carrier became insolvent, and FIGA became the successor insurer. After a hearing and argument before the court resulting in the trial court's announcement of a ruling in favor of Empire for the full amount of its damages, FIGA filed a motion for reduction of its liability for any judgment rendered on the contribution claim, basing its motion on the provisions of section 631.54(3), Florida Statutes (1985), which states in part that a "covered claim" does not include any amount owed an insurer, a reinsurer, or an underwriting association as subrogation recoveries or otherwise. FIGA's motion also relied upon that provision of the statute stating that member insurers shall have no right of subrogation against the insured of an insolvent member. These provisions are pertinent, FIGA maintained below and here, because part of the sums paid by Empire in the settlements which were the subject of the contribution award were paid directly to insurer members of FIGA.
In the final judgment here appealed, the trial court found, among other things, that the contribution statute, section 768.31, Florida Statutes (1985) (the Uniform Contribution Among Tortfeasors Act) was applicable; that FIGA was not entitled to a reduction of the contribution judgment; and that Empire was entitled to judgment against McKenzie and FIGA for the full amount paid by Empire in settlement of the claims of the several plaintiffs against Empire and McKenzie.
On appeal, McKenzie contends that the trial court erred in denying FIGA's motion for reduction of Empire's recovery against FIGA by the amount representing subrogation claims paid by Empire to insurance companies who were FIGA members. McKenzie also contends that the trial court erred in fixing the amount of the judgment awarded to Empire, in that the amount paid by Empire in its settlements with the several plaintiffs exceeded amounts that were reasonable. Only the first point requires extended discussion.
Much of the argument in the briefs of both parties concerns the trial court's ruling that Empire is entitled to contribution under the statute, section 768.31, as opposed to the remedy of subrogation. McKenzie focuses particularly upon the trial court's ruling that the element of "common liability", which must be present to permit Empire to recover by way of contribution against McKenzie, is satisfied by the allegations of the complaints in the underlying litigation in which both Empire and McKenzie were charged as joint tortfeasors. Empire agrees with this interpretation of the contribution action, but cites no authority supporting this position, while McKenzie vigorously opposes the trial court's ruling, pointing to the Fifth District's recent decision in West American Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA), re. denied, 504 So.2d 769 (Fla. 1987).
In West American, an automobile owner's insurer (West American Insurance Company) settled the claim of a passenger *484 injured in a collision between the automobile and a taxicab, and then brought an action for contribution against the taxicab company for contribution to recover sums paid in the settlement. However, at trial, the taxicab company was found to be one hundred percent at fault in causing the accident, and the insured automobile was exonerated of all liability. The trial court entered judgment for the taxicab company, notwithstanding the jury's verdict, ruling that because the jury found the taxicab one hundred percent responsible for the accident, the parties were not "joint tortfeasors" as contemplated by the contribution statute. On appeal, the District Court of Appeal affirmed, agreeing that the element of "common liability" was not present, and that an accident for contribution was not proper. The appellate court held, however, that a cause of action for legal subrogation was fully supported by the evidence at the trial, and that West American was entitled to full recovery on that theory. The court cited to Rule 1.190(b), Florida Rules of Civil Procedure (amendment of pleadings to conform to the evidence), as removing any barrier to recovery based on any deficiency in the pleadings.
We are in agreement with the Fifth District's interpretation of the "common liability" element required for contribution under the statute, since it clearly follows the prevailing view as reflected by those decisions from other jurisdictions relied upon by the court in West American, as well as by later decisions. See, e.g., Stephenson v. McClure, 606 S.W.2d 208 (Mo. App. 1980); Robertson v. McCarte, 13 Mass. App. 441, 433 N.E.2d 1262 (1982); Wesley v. United Services Auto Ass'n., 694 P.2d 855 (Colo. App. 1984). We find, however, that the trial judge's rejection of the holding of West American has no effect upon the correctness of his ultimate decision. We observe, as did the trial judge in the final judgment on appeal, that the ultimate decision in this case does not hinge on whether or not Empire's action against McKenzie is now couched in terms of contribution or subrogation. We base our decision, accordingly, upon the nature of the relief to which Empire is justly and equitably entitled under the admitted facts, as affected by the Florida Insurance Guaranty Association statutes and the purpose behind those statutes.
It is clear that where the remedy of contribution fails because the party against whom contribution is sought is found one hundred percent liable for the tortious injuries, payments made in settlement with injured parties by a non-liable codefendant in return for release of a responsible codefendant, are recoverable under the theory of indemnity or subrogation. An explanation of the remedies available to a settling defendant was concisely stated in Lemmer v. IDS Properties, Inc., 304 N.W.2d 864 (Minn. 1980), quoting from the earlier case of Samuelson v. Chicago, R.I. & Pac. RR. Co., 287 Minn. 264, 178 N.W.2d 620 (1970), as follows:
A right to contribution or indemnity between tortfeasors normally arises in favor of a defendant who, not acting as a volunteer enters into a reasonable settlement with the plaintiff, the result of which is to release the other defendants. A case for recovery of indemnity will be established where it is subsequently shown that the tortfeasor joined in the action by the compromising defendant is solely liable for the injury, while a case for recovery of contribution will be established where it is shown that such liability is shared by the parties defendant.
It is sufficient, for resolution of the case before us, to note our agreement with the West American decision, which found the remedy of subrogation applicable under quite similar facts. Moreover, appellant here concedes that Empire is entitled to recovery from McKenzie by way of subrogation.[1] We note, parenthetically, that apparently *485 no objection was raised as to availability of the remedy of contribution prior to the trial court's announcement of its ruling in favor of Empire in the contribution action.
Turning to McKenzie's argument in behalf of FIGA's motion for reduction of liability, we note that this issue takes a rather novel turn as presented by McKenzie. Based upon the distinctions between the rights of a party entitled to recovery by way of subrogation, as opposed to contribution,[2] and relying upon provisions found in the FIGA statute, section 631.54(3), McKenzie argues that since Empire's right to contribution fails, its right to full recovery of its judgment against McKenzie and FIGA also fails. Pursuing this argument, McKenzie first points to the definition of "covered claim," under section 631.54(3), which states, in part:
(3) "Covered claim" means an unpaid claim, ... which arises out of, and is within the coverage ... of, the applicable limits of an insurance policy to which this part applies... . "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise. Member insurers shall have no right of subrogation against the insured of any insolvent member.
The essence of McKenzie's argument based on the foregoing statutory provision is that since Empire is entitled to recovery only by way of subrogation, Empire acquired no greater rights against FIGA than McKenzie would have after the insolvency of its liability carrier. Accordingly, McKenzie urges, since McKenzie would be barred from recovery from FIGA amounts paid as subrogation recoveries to other FIGA members, so also would Empire be barred. The trial court rejected this argument, as do we.
We note initially that by express requirement of section 631.53, the FIGA statute is to be "liberally construed" to effect the purposes set forth in section 631.51. The enumerated purposes found in that section include the avoidance of excessive delays in payment, avoidance of financial loss to claimants or policy holders because of insolvency of an insurer, and the assessment of the cost of such protection of claimants and policy holders among insurers. Section 631.51(1), (4).
Next, we agree, as stated by the trial judge in the final judgment, that section 631.54(3), excluding from the definition of "covered claim" any "amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise," does not exclude the claim of Empire because Empire does not fall into any of these categories. Further, since Empire is not a "member insurer," the act does not bar Empire's subrogation rights against McKenzie.
We disagree with McKenzie's contention that since Empire paid settlement amounts *486 to member insurers having no right of subrogation against McKenzie, Empire by the same token has no right of subrogation against McKenzie for those payments. The right to equitable subrogation or indemnification accrues when payment is made. Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d 976 (Fla. 3d DCA 1983). The trial court recognized this principle, pointing out in his ruling that Empire's rights must be determined in light of the circumstances existing at the time Empire made its settlement payments. At that time, McKenzie's liability carrier was not insolvent, and neither Empire nor any other participant in the pending litigation had any reason to anticipate that McKenzie's liability carrier would become insolvent before the contribution (or subrogation) action between Empire and McKenzie could be completed.
The FIGA statute's prohibition against recovery by member insurers of their subrogation claims is concerned with insurers' contractually derived subrogation rights arising under their policies, rather than legal subrogation rights acquired by a party such as Empire, whose rights are determined on equitable principles. See, Trueman Fertilizer Co. v. Allison, 81 So.2d 734 (Fla. 1955); Underwriters At Lloyds v. City of Lauderdale, 382 So.2d 702 (Fla. 1980); 12 Fla.Jur.2d, Contribution, Indemnity, and Subrogation, § 18. The inequity of FIGA's attempted reclassification of Empire's payments based upon statutory provisions which were of no concern to the parties at the time of the settlement transactions is obvious. The fallacy of McKenzie's argument is apparent when it is considered that recovery by Empire under McKenzie's view could depend upon mere happenstance, that is, whether the damaged plaintiffs at the time of settlement had been compensated by their own insurers.[3]
As for McKenzie's argument that the trial court's decision deprived FIGA of defenses to which it was entitled under the act, we would point out that FIGA's attempt to retroactively apply these defenses to transactions to which the statute did not apply when made would have the unconscionable result of shifting the financial loss occasioned by insurance company failure from the industry responsible, to a party for whose benefit and protection FIGA was created. The legislative intent to "[a]ssess the cost of such protection among insurers," section 631.51(4), strongly supports the trial court's ruling rejecting McKenzie's contention.
Finally, we find no merit in McKenzie's attack on the reasonableness of the amounts paid in settlement by Empire. The trial court was intimately familiar with this prolonged litigation, and appellant has presented no fact or circumstance which casts any doubt on the trial court's ruling that the settlements were reasonable.
The judgment appealed is, therefore, AFFIRMED.
ERVIN and NIMMONS, JJ., concur.
NOTES
[1] Whether Empire would also be entitled, under the pleadings and proof, to an action for "indemnity" as this remedy has developed under Florida law, Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979), Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977), has not been presented to us and is therefore not considered. Florida's Uniform Contribution Among Tort-feasor's Act preserves all rights of indemnity under existing law, and further specifies that "when one tortfeasor is entitled to indemnity from another, the right of indemnity obligee is for indemnity and not contribution... . Section 768.31(2)(f), F.S. (1985). Although the term "indemnity" in the statute very likely refers primarily to an action for indemnity, the term generally encompasses various forms of indemnity, including the right of indemnity obtained under the distinct but nevertheless closely related doctrine of subrogation. See, Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d 976 (Fla. 3d DCA 1983), pet. for rev. denied, 447 So.2d 885 (Fla. 1984) (subrogation and indemnification, which may be either contractual or equitable in origin, remain distinct when they have their source in contract, but when based upon equity tend to lose their distinctions, and may be referred to by the court interchangeably); and Perkins v. Worzala, 31 Wis.2d 634, 143 N.W.2d 516, 628 (1966) (an error in pleading for "indemnity" where "subrogation" is the appropriate term is not fatal, since "subrogation gives indemnity.").
[2] See, Paoli v. Shor, 345 So.2d 789 (Fla. 4th DCA 1977), approved 353 So.2d 825 (law of contribution among joint tortfeasors is meant to apportion responsibility to pay innocent injured third parties between or among those causing injury); 12 Fla.Jur.2d, Contribution, Indemnity, and Subrogation, § 1; Allstate Ins. Co. v. Metropolitan Dade County, supra, f.n. 1 (subrogation is designed to afford relief when one is required to pay a legal obligation which ought to be met by another, and subrogee "stands in the shoes" of subrogor and is entitled to all rights of its subrogor, but also suffers all of the liabilities to which subrogor would be subject).
[3] McKenzie's argument with respect to Empire's entitlement to the remedy of subrogation, as opposed to contribution, raises also the prospect of an anomalous result whereby if Empire were only 1% negligent Empire's contribution recovery would be 99%, whereas Empire's subrogation recovery, with no negligence whatever, would be drastically reduced because of its payments to FIGA members in the settlement.