SHARP, W., J.
Karen Caldwell appeals from an order that compelled her to arbitrate issues relating to equitable distribution of marital property, determination of separate property alimony and attorney fees, pursuant to an antenuptial agreement entered into by the parties prior to their marriage. She argues that various acts that Jacques Caldwell, her husband, undertook or failed to take during the parties’ dissolution proceedings constituted a waiver of his right to compel arbitration. We disagree and affirm.
The court initially referred matters concerning temporary support, temporary attorney’s fees and exclusive possession of the marital residence to a general master. Karen argues Jacques waived his right to demand arbitration because he did not object to the referral nor did he request arbitration of any of those issues. However, none of these issues are capable of being within the scope of an arbitration agreement entered into as part of an ante-nuptial agreement because they involve support of a spouse during marriage, which cannot be contracted away. See Lashkajani v. Lashkajani, 911 So.2d 1154 (Fla.2005); Belcher v. Belcher, 271 So.2d 7 (Fla.1972).
Karen also argues that because Jacques filed an answer and counterpetition, which attached the antenuptial agreement, and merely asked that it be enforced, he waived his right to arbitrate those issues concerning equitable distribution, determination of separate property pursuant to the agreement, alimony, and attorney’s fees, which can be made part of an ante-nuptial agreement encompassing arbitration. However, at the time those pleadings were filed, the court had not been asked to determine the validity of the antenuptial agreement. Jacques argued that until the antenuptial agreement was held to be valid, he could not file a motion to compel arbitration.
In apparent agreement with this, Karen filed a motion to bifurcate the proceedings for the purpose of allowing the trial court to determine the validity of the antenuptial agreement and to reserve jurisdiction to determine marital and non-marital proper *730 ty rights, alimony and attorney’s fees. A trial was held on this issue and the court ruled that the antenuptial agreement was valid. Thereafter, Jacques filed his motion to compel arbitration.
There is no transcript in the record of these hearings. In its order compelling arbitration, the trial court ruled that it was essential that the validity of the antenup-tial agreement be determined before Jacques could make a demand for arbitration, that the financial discovery conducted benefited Karen and was a burden to Jacques, that the delay between the challenge to the agreement and the determination of its validity was not attributable to either party, that the delay between the order determining the validity of the agreement and the notice to file a demand for arbitration was reasonable under the circumstances (approximately three months), and that there was no act that evidenced Jacques’ intent to waive his right to arbitrate under the agreement. The decision of the trial court carries a presumption of correctness and findings made come to this court with that presumption. Where there is no transcript, it is almost an impossible burden for the appellant to show no competent evidence was submitted to support the trial court’s findings. Waton v. Waton, 887 So.2d 419 (Fla. 4th DCA 2004); Hillman v. Hillman, 567 So.2d 1066 (Fla. 2d DCA 1990).
Under these circumstances, we agree with the trial court that a demand for arbitration could not have been made before the validity of the antenuptial agreement was determined. Cardegna v. Buckeye Check Cashing, Inc., 894 So.2d 860 (Fla.2005). Thus no waiver occurred. See Raymond James Financial Services, Inc. v. Saldukas, 896 So.2d 707 (Fla.2005); Marine Environmental Partners, Inc. v. Johnson, 863 So.2d 423 (Fla. 4th DCA 2003); Miller & Solomon General Contractors, Inc. v. Brennan’s Glass Co., 824 So.2d 288 (Fla. 4th DCA 2002).
AFFIRMED.
PLEUS, C.J., and PETERSON, J., concur.