GROSS, C.J.
 

 The circuit court granted summary judgment and dismissed an equitable sub-rogation case with prejudice. We reverse, holding that the dismissal should have been
 
 without prejudice
 
 because the plaintiff still had time to comply with a statutory notice provision that is a condition precedent to filing suit.
 

 Villa Maria Nursing and Rehabilitation Center, Inc., operates a nursing home. In June 1999, Betty Sanders was admitted as a patient. When she was discharged on June 30, she had a sacral wound. From July 6 to July 28, 1999, Sanders was admitted three times as a patient to a hospital operated by South Broward Hospital District. Her third visit resulted in discharge on August 3, 1999. The nursing home contends that she should not have been discharged because her sacral wound required “in-patient wound care and consultation, among other courses of treatment.”
 

 As a result of injuries arising from the sacral wound, Sanders sued the nursing home under section 400.023, Florida Statutes (2001). That section allows a cause of action for negligence or for a violation of rights specified in Chapter 400, Part II.
 
 See
 
 § 400.023(1), Fla. Stat. (2007). In December 2004, the nursing home paid Sanders $325,000 to settle the lawsuit. In return, Sanders executed a release which provided that she released the nursing home, the hospital and others for any and all damages “resulting or arising out of the incident occurring on or about 6/14/99 to 6/30/99 at [the nursing home] including future developments thereof or in any way growing out of or connected with said transaction and/or incidents, including the subject sacral/buttock wound(s).”
 

 In March 2006, the nursing home sued the hospital seeking equitable subrogation. Its contention was that Sanders’ compen-sable injuries were primarily caused by the negligence of the hospital “in their treatment and care” of Sanders. The hospital moved for summary judgment on multiple grounds and the circuit court granted the motion.
 

 To state a cause of action for equitable subrogation, the subrogee/nursing home was required to establish five elements: (1) that it “made the payment [to Sanders] to protect its own interest;” (2) that it “did not act as a volunteer;” (3) that it “was not primarily liable for the debt;” (4) that it paid off the entire debt; and (5) that subrogation “would not work any injustice to the rights of a third party.”
 
 Goldberg v. State Farm Auto. Mut. Ins. Co.,
 
 922 So.2d 983, 984 (Fla. 4th DCA 2005) (quoting
 
 Pac. Ins. Co. v. Botelho,
 
 891 So.2d 587, 590 (Fla. 3d DCA 2004)).
 

 Under Florida law, a separate cause of action for equitable subrogation is the preferred way to address the situation presented in this case, where the nursing home contends that it was the hospital’s negligence that primarily caused the plaintiffs damages. In
 
 Stuart v. Hertz, Corp.,
 
 351 So.2d 703 (Fla.1977), the Florida Supreme Court held that a defendant in a negligence action may not bring a third
 
 *1170
 
 party indemnity action against a doctor whose malpractice aggravated the plaintiffs injuries. Recognizing that “equity and good conscience should afford the initial tortfeasor a remedy” against the negligent doctor, the Supreme Court later declared that a separate, independent lawsuit for equitable subrogation would allow the initial tortfeasor to “recoup his losses that in fairness should be shared with a negligent doctor,” without violating the concern in
 
 Stuart
 
 that a complex malpractice case should not hamper a simple personal injury suit.
 
 See Underwriters at Lloyds v. City of Lauderdale Lakes,
 
 382 So.2d 702, 704 (Fla.1980);
 
 Huet v. Mike Shad Ford, Inc.,
 
 915 So.2d 728, 726 (Fla. 5th DCA 2005) (suggesting that a separate action for equitable subrogation would be properly brought by a defendant in an automobile negligence case against a car dealership that negligently repaired the plaintiffs vehicle).
 

 We consider all the grounds raised in the hospital’s motion for summary judgment, because the trial court did not specify the basis for its ruling.
 
 See Johnson v. Davis,
 
 449 So.2d 344, 347 (Fla. 3d DCA 1984).
 

 First, the hospital argued that the statute of limitations on medical malpractice against the hospital had run.
 
 See
 
 § 95.11(4)(b), Fla. Stat. (2007). In its answer brief, the hospital concedes that the statute of limitations had not run. For an equitable subrogation action such as this one, the limitations period did not begin to run until the nursing home made payment to Sanders.
 
 See Dominion of Can. v. State Farm Fire & Cas. Co.,
 
 754 So.2d 852, 856 (Fla. 2d DCA 2000),
 
 disapproved on other grounds, Metro. Cas. Ins. Co. v. Tepper,
 
 2 So.3d 209 (Fla.2009);
 
 see Allstate Ins. Co. v. Metropolitan Dade County,
 
 436 So.2d 976, 979 (Fla. 3d DCA 1983).
 
 [1]
 
 To begin the running of the statute from the 1999 incident would undercut the equitable subrogation remedy allowed by
 
 Underwriters at Lloyds v. City of Lauderdale Lakes,
 
 382 So.2d 702 (Fla.1980); by the time the typical negligence suit is resolved, the medical malpractice statute of limitations would have run against the negligent health care provider.
 

 The hospital’s second basis for the summary judgment was that the nursing home failed to establish all the elements of equitable subrogation. The hospital argues that nothing in the second amended complaint “alleged that the basis of Ms. Sanders’ claim against Villa Maria was [the] purported decubitus ulcer” that the hospital exacerbated. However, the nursing home’s pleading adequately described the reason it made payment to Sanders. The second amended complaint refers to the “distinct injuries and damages for which Plaintiff, Villa Maria, paid” damages to Sanders. Also, the release was incorporated into the pleading and it described the damage causing incident as the “incident occurring on or about 6/14/99 to 6/30/99 at Villa Maria Nursing and Rehabilitation Center, Inc., ... in any way growing out of or connected with said transaction and/or incidents, including the subject sacral/buttock wound(s).” Thus, contrary to the hospital’s contention, the
 
 *1171
 
 nursing home’s payment and Sanders’ release covered the hospital’s treatment of the decubitus ulcer.
 

 Next, the hospital contends that the nursing home failed to comply with section 768.28(6)(a), Florida Statutes (2007),
 
 [2]
 
 by failing to present its claim in writing to the Department of Financial Services within three years after the claim arose. At the summary judgment hearing, counsel for the nursing home requested an opportunity to cure the notice problem by providing notice to the Department of Insurance.
 

 Compliance with the notice requirement of section 768.28 was a condition precedent to this lawsuit against the hospital.
 
 See Commercial Carrier Corp. v. Indian River County,
 
 371 So.2d 1010, 1022-23 (Fla.1979);
 
 Lindberg v. Hosp. Corp. of Am.,
 
 545 So.2d 1384, 1387 (Fla. 4th DCA 1989) (citing
 
 Commercial Carrier
 
 ). The notice is a “temporary procedural bar to a lawsuit against the State or one of its subdivisions.”
 
 Widmer v. Caldwell,
 
 714 So.2d 1128, 1129 (Fla. 1st DCA 1998).
 
 In Lee v. S. Broward Hosp. Dist.,
 
 473 So.2d 1322 (Fla. 4th DCA 1985), this court permitted the amendment of a complaint to allege compliance with section 768.28(6) where notice to governmental agencies was given subsequent to the filing of the lawsuit but within the statute of limitations period. Another appropriate response to a motion raising a plaintiffs failure to comply with the statute is to dismiss the case without prejudice, where the applicable statute of limitations has not run at the time of dismissal and it is therefore possible to give the statutory notice prior to the case being barred by the statute of limitations.
 
 See Wemett v. Duval County,
 
 485 So.2d 892 (Fla. 1st DCA 1986);
 
 VonDrasek v. City of St. Petersburg,
 
 777 So.2d 989, 991 (Fla. 2d DCA 2000). The notice “is not intended to be a special ‘gotcha’ that allows governmental entities to sandbag plaintiffs; it functions as a tool to allow these entities to identify and settle claims on a timely basis without the expense of extended litigation.”
 
 VonDrasek,
 
 777 So.2d at 991.
 

 Here, the nursing home paid to settle the case in December 2004. At the October 5, 2007 hearing on the motion for summary judgment, counsel for the nursing home requested permission to comply with the statutory notice. The circuit court granted the hospital’s motion for summary judgment on October 5 and entered a final summary judgment against the nursing home on November 9, 2007. At that time the nursing home was within the three year period to file its section 768.28(6)(a) notice and the four year statute of limitations for filing its equitable
 
 *1172
 
 subrogation action.
 
 See
 
 § 95.11(3)(p), Fla. Stat. (2007);
 
 State Farm Mut. Auto. Ins. Co. v. Johnson,
 
 34 Fla. L. Weekly D412, — So.3d-, 2009 WL 416603 (Fla. 2d DCA 2009) (indicating that four-year statute of limitations for equitable subrogation runs from time subrogee pays claim). At the time of dismissal, the applicable limitations periods had not expired. Therefore, the case should have been dismissed without prejudice.
 
 Cf. Halpin v. Short,
 
 490 So.2d 1271 (Fla. 2d DCA 1986) (holding that dismissal with prejudice was proper where the limitations period for providing section 768.28(6) notice had expired by the time dismissal was entered).
 

 The hospital contends that
 
 Pangilinan v. Broward County,
 
 914 So.2d 1094, 1096 (Fla. 4th DCA 2005), controls this case, but it is distinguishable. In
 
 Pangilinan,
 
 after the three-year period to file a section 768.28(6)(a) notice had run, the County moved for summary judgment based on noncompliance with the statute. The plaintiff could not have cured such an omission. Before the trial court granted the motion for summary judgment, the plaintiff offered no evidence of compliance. After the court granted summary judgment, the plaintiff moved for rehearing and attempted to submit affidavits showing her compliance with the notice requirement. We held that the trial court did not “abuse its discretion in determining that a counter-affidavit presented for the first time on rehearing of a summary judgment is too late.” 914 So.2d at 1097.
 

 Pangilinan
 
 was primarily a case about a trial court’s discretion on the procedural issue of how to handle affidavits submitted after summary judgment has been granted. It was not a case where the plaintiff still had time to comply with the notice requirements of section 768.28(6)(a). Nor was it a case where the plaintiff asked the trial court for time to comply.
 

 We reverse the final judgment dismissing the case with prejudice and remand to the circuit court for the entry of a final judgment dismissing the case without prejudice for failure to comply with section 768.28(6)(a).
 

 FARMER, J., and MAASS, ELIZABETH, Associate Judge, concur.
 

 [1]
 

 . A different rule applies to contractual subro-gation, which arises from "a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor.”
 
 Dade County Sch. Bd.
 
 v.
 
 Radio Station WQBA,
 
 731 So.2d 638, 646 (Fla.1999). ”[I]n contractual subrogation actions, the statute of limitations runs from the date of the injury to the original ‘rightsholder’ and not from the date of payment by the subrogee.”
 
 Allstate Ins. Co. v. Metro. Dade County,
 
 436 So.2d 976, 979 (Fla. 3d DCA 1983);
 
 see Don Reid Ford, Inc. v. Feldman,
 
 421 So.2d 184, 185-86 (Fla. 5th DCA 1982).
 

 [2]
 

 . Subsections 768.28(6)(a) and (b) provide:
 

 (6)(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; except that, if such claim is for contribution pursuant to s. 768.31, it must be so presented within 6 months after the judgment against the tortfeasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor seeking contribution has either discharged the common liability by payment or agreed, while the action is pending against her or him, to discharge the common liability.
 

 (b) For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.