# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D19-4687

_____

COMMUNITY POWER NETWORK
CORPORATION d/b/a SOLAR
UNITED NEIGHBORS,

    Appellant,

    v.

JEA, a Florida municipal
electric utility,

    Appellee.

_____


On appeal from the Circuit Court for Duval County.
Virginia Norton, Judge.

September 9, 2021

NORDBY, J.

Utility customers who opt to install solar panels on their houses don't simply use energy—they also generate it. During the day, when the sun is out, these residential rooftop solar panels will typically produce more energy than the household will consume. This excess energy can travel through the utility company's electrical grid (and the utility company may sell it to other customers). And at night (or on a cloudy day), when the solar panels are not producing energy, the household receives its energy from that same grid. This dynamic has led to "net metering," where utility customers offset their energy consumption *from* the grid with the excess solar energy they transmit *to* the grid.

Beginning in 2009, JEA allowed its customers to receive credit for any excess solar energy they generated at the full electric retail rate per kilowatt-hour. This changed in 2018, when JEA's new Distributed Generation Policy took effect. Under the 2018 Policy, solar customers receive credit at much less than the retail rate.

In response, Community Power Network Corporation, d/b/a Solar United Neighbors (SUN) sued JEA, arguing that the new policy failed to provide a net metering program as required by Florida law. JEA raised several arguments in defense, including a challenge to SUN's standing. The trial court ultimately rejected SUN's claims for declaratory and injunctive relief and entered final judgment for JEA. Because SUN lacks standing to challenge JEA's 2018 Policy, we affirm.

I.

Appellant SUN is a nonprofit corporation incorporated in the District of Columbia. Its activities include encouraging residential utility customers to organize into solar cooperatives, usually consisting of fifty to one hundred neighbors. SUN provides education to these groups on "going solar," including the economics of solar energy and the selection of a solar-equipment installer for the group. In return, for every residential home that installs solar equipment, SUN receives a fee from the contractor selected to install the equipment for the cooperative's members.

Appellee JEA is a nonprofit, community-owned municipal electric utility created by the Florida Legislature and the City of Jacksonville. In 2008, the Florida Legislature amended Section 366.91, Florida Statutes, to require municipal electric utilities, like JEA, to "develop a standardized interconnection agreement and net metering program for customer-owned renewable generation." § 366.91(6), Fla. Stat. (2018); Ch. 2008-227, § 41, at 50, Laws of Fla. That statute defines "net metering" as "a metering and billing methodology whereby customer-owned renewable generation is allowed to offset the customer's electricity consumption on site." § 366.91(2)(c), Fla. Stat.

2

At first, JEA used a simple net metering methodology: a 1 to 1 ratio. Under JEA's 2009 Net Metering Policy, if a solar customer transmitted excess energy to JEA's electric grid, JEA would credit the customer for that excess power at JEA's retail rate, that is, the rate charged to customers per kilowatt-hour. By crediting excess energy at the retail rate, 1 kilowatt-hour generated would offset 1 kilowatt-hour consumed. A solar customer, therefore, would pay only for the net difference between the energy consumed and the energy generated.

As customer-owned solar equipment became more prevalent, JEA revisited the 2009 Policy and its use of the full retail rate to credit customers for energy generated. JEA calculates its retail rate using two primary components: (1) fuel costs (i.e., the cost of natural gas or coal), and (2) capacity costs (i.e., the cost of building, operating, and maintaining power plants, transmission equipment, and distribution equipment across JEA's electric grid). The former makes up about thirty percent of JEA's retail rate, while the latter accounts for the remaining seventy percent. In JEA's view, while customer-generated solar energy reduced the utility's cost of electric generation by negating the need to purchase fuel, it did not reduce JEA's capacity costs to operate and maintain the electrical grid.

JEA amended its policy to reflect these calculations. The new 2018 Distributed Generation Policy reduced the offset credit rate from the full retail rate to the "fuel charge rate," that is, the rate representing fuel-related costs. This means that JEA now charges its solar customers the full retail rate for kilowatt-hours consumed and credits them at the much lower fuel charge rate for the total kilowatt-hours generated and sent to the grid.

SUN had been preparing to launch a solar cooperative in Jacksonville, Florida, but the organization cancelled those plans in the wake of JEA's 2018 Policy. Based on the new policy's reduction in the offset credit rate, SUN believed there was no longer a financial incentive for JEA customers to install solar equipment.

SUN therefore sued for a declaration that the 2018 Policy violates section 366.91, Florida Statutes, and sought an injunction directing JEA to provide a lawful net metering program. JEA

3

moved to dismiss the suit claiming, among other things, that SUN lacked standing. The trial court denied that motion. Both parties moved for summary judgment, with JEA again asserting various arguments that included SUN's lack of standing. Without specifying the basis for its ruling, the trial court denied SUN's motion for summary judgment, granted JEA's motion, and entered final judgment for JEA.

## II.

We review de novo a grant of summary judgment to determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Carter Dev. of Mass., LLC v. Howard*, 285 So. 3d 367, 370 (Fla. 1st DCA 2019).

Because the trial court's order did not explain the basis for granting JEA's motion for summary judgment, we must consider all grounds raised in JEA's motion and affirm if any theory supports the decision. *See Villa Maria Nursing and Rehab. Ctr., Inc. v. S. Broward Hosp. Dist.*, 8 So. 3d 1167, 1170 (Fla. 4th DCA 2009); *see also Sunchase Apartments v. Sunbelt Serv. Corp.*, 596 So. 2d 119, 122 (Fla. 1st DCA 1992) ("[W]e also recognize the rule, applicable to summary judgments as well as to other orders and judgments, that an appellate court must affirm the trial court's decision if it is supported by any theory, regardless of the reasons stated in the order or judgment."). On the record before us, we conclude SUN lacks standing, and we affirm without addressing the other issues raised in JEA's motion.[*]

Framed broadly, our standing inquiry seeks to gauge whether a party has enough of a stake in a particular controversy. *Nedeau v. Gallagher*, 851 So. 2d 214, 215 (Fla. 1st DCA 2003). Although

---

[*] In its motion for summary judgment, JEA argued that: (1) SUN lacks standing; (2) the doctrine of sovereign immunity bars SUN's claims; (3) SUN's claims are not justiciable because SUN's claims require the court to violate the separation of powers clause of the Florida Constitution; and (4) JEA's 2018 Policy follows Florida law.

there is no precise formula to divine the line between an interest that is sufficient for standing purposes, and one that is not, Florida courts look to three familiar concepts—injury, causation, and redressability—to assess a plaintiff's standing. *See State v. J.P.*, 907 So. 2d 1101,1113 n.4 (Fla. 2004). Under these concepts, a plaintiff first must identify an actual or imminent injury that is concrete, distinct, and palpable. Next, a plaintiff must establish "a causal connection" linking the injury to the conduct being challenged. Finally, a plaintiff must show a "substantial likelihood" that the relief sought will remedy the alleged injury. *Id.*; *see also DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202, 1213–14 (Fla. 1st DCA 2020). At its core, standing exists when a plaintiff can identify an injury caused by the defendant's conduct that the court can remedy.

Given this, SUN needed to prove the 2018 Policy caused SUN harm. And in doing so, it had to rely on clear and ascertainable facts, not speculation. *See Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 117 (Fla. 2011); *see also McCall v. Scott*, 199 So. 3d 359, 366 (Fla. 1st DCA 2016) (explaining that speculative and conclusory allegations of harm cannot confer standing); *Fla. Home Builders Ass'n, Inc. v. City of Tallahassee*, 15 So. 3d 612, 613 (Fla. 1st DCA 2009) (holding that speculative possibilities do not create the necessary standing for declaratory or injunctive relief).

SUN did not meet this burden. Instead, it presented a conclusory assertion of injury linked to the 2018 Policy by only a tenuous chain of speculation. In SUN's view, JEA's change in policy caused the nonprofit organization economic harm: The 2018 Policy, which reduced the offset credit rate for solar customers, made installing solar rooftops within JEA's territory less viable financially for JEA customers. This was likely going to deter JEA customers from choosing solar as a renewable energy option and decrease any interest in joining a solar cooperative. So SUN cancelled its plans to open a Jacksonville solar cooperative and lost out on any potential revenue it might have earned in fees from solar equipment installers hired by the cooperative.

Yet SUN gave little detail about its planned Jacksonville cooperative. The cooperative never materialized because SUN cancelled it before the scheduled launch. And SUN failed to

identify, with any degree of certainty, a customer base who, but for the 2018 Policy, would have participated in the cooperative. At most, SUN identified a couple of willing individuals. But even then, this Court would still have to speculate on whether (without the 2018 Policy) SUN's efforts to convince JEA customers to "go solar" would have been successful, whether enough households would have joined SUN's cooperative, and whether this would have led to payments from solar equipment installers (and how much). What is more, this Court would have to accept the blanket assumption that SUN could not have successfully established a cooperative even with the 2018 Policy in effect.

As plaintiff, SUN bore the burden to establish all of this through clear and definite facts. It failed to do so, and we decline to fill these gaps with our own conjecture and assumptions. Because SUN lacks standing to challenge the 2018 Policy, we affirm the trial court's entry of final summary judgment for JEA.

AFFIRMED.

ROWE, C.J., and WINOKUR, J., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Bradley Marshall and Bonnie Ann Malloy of Earthjustice, Tallahassee, for Appellant.

R. Kyle Gavin, Assistant General Counsel; and Tiffiny Douglas Pinkstaff, Assistant General Counsel, Office of General Counsel, Jacksonville, for Appellee.