Arthur and Patti Bice appeal from a summary judgment in favor of Indurall Chemical Coating Systems, Inc. ("Indurall"), and two of its supervisory employees, Pat McNamee and Tim Mayfield.
Arthur Bice quit his job as assistant manager at Winner's Centerpoint restaurant on December 31, 1984. He answered an employment advertisement placed by Indurall on January 3, 1985, by driving to Indurall's Hoover store, where he spoke to Tim Mayfield. Bice and Mayfield discussed the available job as relief manager, its duties, and its salary. Mayfield told Mr. Bice that there was health insurance coverage that was paid for by the company. Mr. Bice returned later that same day for a second interview, this time with Pat McNamee and Mayfield. During this meeting, according to Mr. Bice's testimony, he was told:
 "[M]e and my dependents would be covered without any cost to me. It [health insurance] was paid for by the company, no deductions from your check, just automatically paid."
Patti Bice was six months pregnant at the time her husband was interviewed. Mayfield and McNamee told Mr. Bice that they did not know if the birth of his child would be covered by the insurance.
Mr. Bice was hired. He began work on January 7, 1985, and at that time he was given an employee handbook and a "summary plan description of health insurance" issued by Associated Industries of Alabama Group Health Benefits Trust ("A.I.A."), Indurall's group health insurer. That night, Mr. Bice read and signed the following statement:
 "I, Arthur R. Bice, Jr., have read and understand the employee handbook; I have been allowed to ask questions about it; and I understand that I can always *Page 950 
ask for further clarification on any matter as my employment continues."
Mrs. Bice's baby was not due until some time in March, but she gave birth prematurely, on February 24, 1985, to a baby girl with a birth defect that required emergency surgery. The child remained in intensive care for an extended period.
Upon inquiry, Mayfield informed Mr. Bice that the medical expenses were not covered under the A.I.A. policy because they accrued prior to the effective coverage date of March 1, 1985.
Arthur and Patti Bice filed suit on December 18, 1985, against Indurall, Pat McNamee, Tim Mayfield, A.I.A. Group Health Benefits Trust, and Pilot Life Insurance Company (Pilot had issued a separate individual policy to the Bices that covered a limited amount of the medical expenses for the birth of their child), alleging fraudulent misrepresentation, negligence, and bad faith. The Bices filed an amended complaint on April 5, 1988, alleging breach of contract and negligent failure to provide insurance. Indurall, Mayfield, and McNamee filed a motion for summary judgment, which was granted on August 22, 1988, following a hearing.[1] The summary judgment was made final pursuant to Rule 54(b), A.R.Civ.P. The Bices appeal from the summary judgment only as to the allegations of fraudulent misrepresentation, negligence, and negligent failure to insure.
We affirm.
The employee handbook contained the following health insurance provisions, entitled:
"Hospital and Medical Insurance
 "Hospital and Medical Insurance is included in the Group Insurance Plan at no cost to the employee. This plan of insurance covers 80% of eligible medical costs (50% in the case of certain treatment of mental, psychoneurotic and personality disorders) in the excess of an annual deductible.
 "For the employee to be eligible for this benefit, he must enroll in the program on the first day of employment. However, the employee must be on the payroll at least thirty (30) days before the insurance company will process the application. Coverage will begin once your application has been processed. Maximum processing time is sixty (60) days.
 "A copy of the Plan is furnished by the insurance carrier and describes the Plan in detail. Should you have any questions concerning your coverage, please contact the insurance company."
David Hood, the president of Indurall, testified that if everything goes routinely, an employee will be accepted and the insurance will be in force on the first day of the month following the 30-day period. Mr. Bice testified that he understood this provision to mean that he would be covered beginning 30 days after he was placed on the payroll.
Mr. Bice acknowledged that he had read the "summary plan description of health coverage," which provides in part:
 "ELIGIBILITY: Eligibility for this plan begins on the first day of the month following ___ days of employment. Only employees who regularly work 30 or more hours per week are eligible."
That document also contains the following terms:
"WAITING PERIODS
 "All members are subject to the following waiting periods (unless waived on the employer's Participation Agreement):
"A. Pre-existing Conditions:
 "Benefits are available for pre-existing conditions only after nine (9) consecutive months as a Member, beginning with the effective date of such Member's coverage hereunder. (A pre-existing condition is a condition, including pregnancy, disease or ailment, congenital or otherwise, which existed on a Member's effective date of coverage, whether manifested or not, or for *Page 951 
which medical or surgical treatment or advice has been rendered within one year prior to the coverage date.)"
Mr. Bice never discussed these provisions or the employee handbook insurance provisions with anyone at Indurall; that fact is shown by his testimony:
 "Q. And as I understand your testimony, . . . from the time of your second interview with them until the date of that phone call at the time of the birth, you didn't have any conversations with Tim [Mayfield] or Pat [McNamee] or anyone at Indurall about the coverage provided under their plan?
"A. No.
"Q. Is that right, that you had no conversations?
"A. No, we had never talked about that.
 "Q. Did they provide anything to you in writing about that, other than the employee handbook and the summary plan description?
"A. No."
Furthermore, Mr. Bice stated in an affidavit that the summary plan description of health insurance was referred to as the insurance company's booklet, not Indurall's.
Mr. and Mrs. Bice allege in their complaint:
 "[T]he defendants were knowledgeable or led the plaintiffs to believe that they were knowledgeable in matters of hospitalization insurance, and expressly advised the plaintiffs to rely upon the defendants' assertions and representations pertaining to the subject insurance coverage when in fact the defendants were not knowledgeable and possessed no expertise, and as a proximate consequence of the defendants' irresponsible representations and negligence the plaintiffs sustained a severe financial detriment. . . . [T]he representations made by the defendants as pertained to the pertinent provisions of the subject insurance coverage and policies were false or made with such a careless and reckless and wanton disregard for their authenticity . . . as to amount to knowledge of their falseness and as such the defendants acted in [a] fraudulent manner toward the plaintiffs."
These allegations are not supported by the evidence in this case. In order for the Bices to make out a case of fraud, the following elements must be proven:
 " '(a) [A] false representation [usually] concerning an existing material fact, . . .;
 " '(b) representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge;
 " '(c) reliance by the plaintiff on the representation and that he was deceived by it;
 " '(d) reliance which was justified under the circumstances;
 " '(e) damage to the plaintiff proximately resulting from his reliance.' "
Army Aviation Center Federal Credit Union v. Poston,460 So.2d 139 (Ala. 1984). (Citations omitted.)
Arthur Bice's testimony and signed statement confirm that he received the employee handbook from Indurall and that he read it. The employee handbook states that if an employee has a question regarding health insurance coverage he should contact the insurance company. Neither Mayfield nor McNamee held himself out to the Bices as being knowledgeable about the health insurance program, nor did they, as shown by Mr. Bice's testimony, make any representations as to the effective date of coverage.
Neither Mayfield nor McNamee made any representation of an existing material fact. According to Arthur Bice, he was told that he and his dependents would be covered without any cost to him. This was a representation of future coverage conditioned on Mr. Bice's being employed by Indurall. Further, this was not a misrepresentation; health insurance was provided by Indurall. The basis of this suit was not a claim that the insurance was not provided, *Page 952 
but rather was a claim that the effective date of coverage was to be earlier than the date it actually began. As stated above, Mayfield and McNamee made no representation as to the date upon which coverage began. Any reliance on the part of the Bices was based solely on their own interpretation of the handbook and summary plan description, and not on representations by Mayfield or McNamee on behalf of Indurall, and not on the employee handbook.
The employee handbook provided for a maximum period of 90 days before coverage could begin. However, Mr. Hood testified, concerning the application process, that "if everything goes routinely, an employee will be accepted and insurance will be in force on the first day of the month following the thirty day period." This is exactly what happened in this case. Mr. Bice was employed on January 7, 1985. His 30-day period expired on February 5, 1985. The first day of the first month following the expiration of the 30-day period was March 1, 1985, the date coverage on the Bices became effective. This was 52 days from the date Mr. Bice's employment with Indurall began.
The Bices also argue that they detrimentally relied on a representation that the health insurance was paid for by the company and would begin at a date earlier than the date it actually began. This argument must fail in light of Mr. Bice's testimony that he had recently quit his previous job and relinquished his insurance coverage, and was unemployed and uninsured (except to the extent of Pilot Life's coverage) when he was hired by Indurall. That is why the Bices purchased the coverage from Pilot Life.
There is a total absence of any evidence tending to show that Mayfield, McNamee, or anyone else on behalf of Indurall, made any misrepresentations, or had an intent to deceive or intent not to provide coverage as represented. Therefore, the trial court's summary judgment as to the fraud count is due to be affirmed.
The allegation of negligence is likewise unfounded. Two of the elements necessary for recovery in a negligence action are a duty on the part of the defendant and a breach of that duty. An employer is not under a duty to explain the coverage provided by its health insurance carrier, unless it assumes such a duty.
In the instant case, Indurall did not assume any duty to explain the insurance coverage provided by A.I.A. McNamee and Mayfield merely told Mr. Bice that the insurance was paid for by Indurall. Furthermore, the employee handbook provided that questions regarding coverage should be directed to the insurance company. Therefore, summary judgment was proper as to the allegation of negligence.
We now turn to the Bices' allegation of negligent failure to insure, contained in their amended complaint. There was no evidence of negligence in this regard. The insurance was provided, but the effective date of the coverage was after the birth of the baby.
The uncontroverted facts offered below in support of and in opposition to the motion for summary judgment present a question of law appropriate for resolution by summary judgment. Accordingly, we affirm the trial court's summary judgment in favor of Mayfield, McNamee, and Indurall.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] The claims against Pilot Life were voluntarily dismissed with prejudice; and motions to quash service, filed by Blue Cross and Blue Shield, Associated Group Services, and William E. Hood (who were served in an attempt to effect service on A.I.A.), were granted.