982 So.2d 522 (2007)
Tiffany A. HARDIN and Tina Hardin
v.
METLIFE AUTO AND HOME INSURANCE COMPANY.
2060523.
Court of Civil Appeals of Alabama.
August 31, 2007.
Certiorari Denied October 12, 2007.
Robert R. Kracke and Clifton S. Price II, Birmingham, for appellants.
Jack M. Bains, Jr., of McDaniel, Bains & Norris, P.C., Homewood, for appellee.
Alabama Supreme Court 1061721.
THOMPSON, Presiding Judge.
On December 23, 2001, Tiffany A. Hardin, while driving a vehicle owned by Tina Hardin, collided with a vehicle owned and operated by John Foti. Foti and his wife sued Tiffany Hardin, Tina Hardin (hereinafter "the Hardins"), and the Fotis' underinsured-motorist-insurance provider, Metlife Auto and Home Insurance Company ("Metlife").
On or about September 24, 2004, the Fotis' attorney notified counsel for Metlife of the Fotis' intention to settle at least some of their claims against the Hardins with the Hardins' liability-insurance carrier, Safeway Insurance Company of Alabama, Inc. ("Safeway"). The amount of that proposed settlement was $17,000. In a letter dated September 24, 2004, Metlife's attorney advised the attorney for Safeway that Metlife would advance to the Fotis the $17,000 settlement offer and retain its right of subrogation against the Hardins. Shortly thereafter, on October 12, 2004, Metlife sent a check in the amount of $17,000 to the Fotis' attorney with a designation indicating that the check was for the purpose of the "substitution of tortfeasor funds."
In a letter dated March 30, 2005, counsel for Metlife notified the Hardins that Metlife had settled all of the Fotis' remaining claims for an additional $3,000. In that letter, Metlife requested that either the Hardins or Safeway reimburse the $17,000 Metlife had paid to the Fotis in order to protect its subrogation rights. On March 31, 2005, Safeway sent to Metlife a $17,000 check. Metlife rejected that check and notified Safeway that it intended to seek repayment of the entire $20,000 it had paid on the claims; in the letter communicating that position, Metlife specified that it was not waiving its subrogation rights.
*524 Although the record does not contain any documents concerning Safeway's reaction to Metlife's rejection of the $17,000 check, Metlife has alleged that on or after June 24, 2005, it reconsidered its position and advised Safeway that it would accept the initial offer of $17,000. According to Metlife's allegations, however, after Metlife decided to accept the payment of $17,000, Safeway or the Hardins refused to make any payment on Metlife's subrogation claim.
On March 28, 2006, Metlife sued the Hardins seeking to enforce its subrogation rights. In its complaint, Metlife sought an award of $17,000, the amount it contended represented its subrogation interest. The Hardins filed a motion to dismiss Metlife's complaint, arguing that Metlife was barred by the applicable statute of limitations from asserting its right of subrogation against them. The trial court denied the Hardins' motion to dismiss. The Hardins then answered Metlife's complaint by again asserting, among other things, that Metlife's claim was barred by the applicable statute of limitations.
Metlife moved for a summary judgment. The Hardins responded to that motion, and they moved for a summary judgment. On February 22, 2007, the trial court entered an order granting Metlife's summary-judgment motion and denying the Hardins' motion. The Hardins timely appealed.
The pertinent facts are not in dispute, and, therefore, this action must be resolved by applying the applicable law to the undisputed facts. "Where only a question of law is presented, a case is appropriate for a summary judgment." Finch v. Auburn Nat'l Bank of Auburn, 646 So.2d 64, 65 (Ala.Civ.App.1994); see also Bice v. Indurall Chem. Coating Sys., Inc., 544 So.2d 948, 952 (Ala.1989) ("The uncontroverted facts offered below in support of and in opposition to the motion for summary judgment present a question of law appropriate for resolution by summary judgment."). "`[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo."' Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999) (quoting Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997)).
In this case, in reaching its judgment the trial court relied upon certain caselaw precedent from Florida that has been presented as persuasive authority by Metlife. See Fireman's Fund Ins. Co. v. Rojas, 409 So.2d 1166 (Fla.Dist.Ct.App. 1982). However, there is an Alabama case on point in which our supreme court addressed the issue of when the statute of limitations begins to run on a subrogated insurer's third-party claim. Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973).
In Home Insurance Co. v. Stuart-McCorkle, Inc., supra, the plaintiff business sued its insurer, Home Insurance Company ("Home"), seeking coverage for damage caused by water and ice that fell into the business's premises during a renovation project. Home filed a third-party complaint against, among others, the contractor, the subcontractor, and the architect on the renovation project. In its complaint, Home alleged that it held a right of subrogation against the defendants. During the jury trial, the trial court gave affirmative charges that, among other Jthings, indicated that the then-applicable statute of limitations barred Home's third-party complaint. The trial court entered a judgment on a jury verdict in favor of the plaintiff against Home and against Home on its claims against the third-party defendants. Home appealed, arguing that the trial court had erred in allowing the affirmative *525 charge concerning the statute of limitations. Our supreme court agreed with the trial court, concluding that the statute of limitations applicable to Home's subrogation claim began to run at the time the insured's rights to recovery arose. Home Ins. Co. v. Stuart-McCorkle, Inc., supra. The court explained the basis for its holding as follows:
"[W]e find the well established rule that a subrogee can acquire no greater rights than those possessed by the principal whose rights he asserts. In Crutchfield v. Johnson & Latimer, 243 Ala. 73, 8 So.2d 412 (1942), this court stated the rule as follows:
"`A person entitled to subrogation must work through the creditor whose rights he claims. He stands in the shoes of the creditor and is entitled to the benefit of all the remedies of the creditor and may use all means which the creditor could to enforce payment. . . . But he can only enforce such rights as the creditor could enforce, and must exercise such rights under the same conditions and limitations as were binding on the creditor, and hence, can be subrogated to no greater rights than the one in whose place he is substituted. . . .' [Citations omitted]
". . . .
"Furthermore, this court has specifically held this principle applicable to the running of the statute of limitations. In American Bonding Co. v. Fourth National Bank, 205 Ala. 652, 88 So. 838 (1921), involving a suit by a surety suing as subrogee of a cestui que trust against a third party who participated in the misappropriation by the surety's principal of money belonging to the cestui que trust, this court stated:
"` . . . The complainant, the bonding company, as surety for Estelle Manegold, seeks to be subrogated to her rights in the enforcement of the claim against the bank, but the complainant as surety can stand in no higher position than the principal. Colvin v. Owens, 22 Ala. 782 [(1853)]; Houston, Ex'r, v. Branch Bk., 25 Ala. 250 [(1854)]. This principle is likewise applicable so far as the running of the statute of limitations is concerned. 17 R.C.L. 833.'
"We note that the surety in American Bonding was not suing for indemnity against his principal as was the surety in Smith v. Pitts, [167 Ala. 461, 52 So. 402 (1910)], but rather was suing as subrogee against a third party against whom he had no right of indemnity.
"The rule stated in American Bonding is in accord with the overwhelming weight of authority in other jurisdictions. See 3 Moore's Federal Practice [14.09]; Appleman, Insurance Law & Practice, § 4102; 16 Couch 2d, Insurance, § 61:230.
". . . .
"We, therefore, conclude that the statute of limitations began to run against appellant Home at the same time it began to run against its insured, Schloss & Kahn, on December 17, 1968, at the latest.
"It is clear from our cases that the statute of limitations begins to run when the cause of action accrues, and that the cause accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon. Henslee v. Merritt, 263 Ala. 266, 82 So.2d 212 (1955); Brown v. First National Bank of Montgomery, 261 Ala. 565, 75 So.2d 141 (1954); Esslinger v. Spragins, 236 Ala. 508, 183 So. 401 (1938); Larue v. C.G. Kershaw Contracting Co., 177 Ala. 441, 59 So. 155 (1912).

*526 "We have held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. In Kelly v. Shropshire, 199 Ala. 602, 75 So. 291, 292 (1917), the rule was stated as follows:
"`If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.'"
Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. at 607-08, 285 So.2d at 472-73(emphasis added).
Our supreme court's holding in Home Insurance Co. v. Stuart-McCorkle, Inc., supra, is in line with the view of the majority of jurisdictions confronted with determining when the statute of limitations begins to run on a subrogated insurer's third-party claim. See Jane Massey Draper, Annot., When Does Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third-Party Tortfeasor, 91 A.L.R.3d 844, § 3 (1979), and cases cited therein.
We also note that Fireman's Fund Insurance Co. v. Rojas, supra, upon which the trial court relied in reaching its judgment, was later held by the Florida court to be misleading in that Fireman's Fund involved indemnity rather than subrogation. Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d 976 (Fla.Dist.Ct. App.1983).[1] In Allstate Insurance Co. v. Metropolitan Dade County, 436 So.2d at 980, the court, in adopting the view held by the majority of jurisdictions, held that, in Florida, "in contractual subrogation, the statute of limitations begins to run on the date the injury occurs and not on the date the subrogee makes its payment to the subrogor."
In Home Insurance Co. v. Stuart-McCorkle, Inc., supra, our supreme court resolved the issue regarding when, in Alabama, the statute of limitations begins to run on a subrogated insurer's claim *527 against the tortfeasor. This court and the trial court are bound by the precedent established by our supreme court. § 12-3-16, Ala.Code 1975; Farmers Ins. Exch. v. Raine, 905 So.2d 832, 835 (Ala.Civ.App. 2004). Therefore, under the precedent of Home Insurance Co. v. Stuart-McCorkle, Inc., supra, the statute of limitations for Metlife to file its cause of action began to run on December 23, 2001, the date of the automobile accident that gave rise to the claims by the Fotis, Metlife's insureds.
The parties do not dispute that a two-year statute of limitations is applicable to Metlife's subrogation claim. See § 6-2-38(l), Ala.Code 1975. The dispute in this case has focused entirely on when that two-year statute of limitations began to run. Metlife filed its complaint on March 26, 2006, well over two years after December 23, 2001, the date its cause of action accrued. Accordingly, we must conclude that Metlife's claim was barred by the statute of limitations and, therefore, that the trial court erred in entering a summary judgment in favor of Metlife. We reverse the trial court's summary judgment and remand the cause to the trial court.
REVERSED AND REMANDED.
BRYAN, THOMAS, and MOORE, JJ., concur.
PITTMAN, J., concurs specially.
PITTMAN, Judge, concurring specially.
Based upon binding Alabama authority, see Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973), I concur in the main opinion. I write specially to note: (1) that no contention that the two-year statute of limitations was tolled as to Metlife's subrogation claim during the pendency of the Fotis' action against the Hardins was raised in the trial court or on appeal; (2) that no opinion has been expressed regarding the potential availability to Metlife of a right to intervene in the Fotis' tort action against the Hardins for purposes of obtaining relief under Rule 60(b)(6), Ala. R. Civ. P.; (3) that no issue is presented with respect to legal or equitable remedies Metlife may have against the Fotis; and (4) that no argument has been made that Home Insurance has been, or should be, overruled by the Alabama Supreme Court.
NOTES
[1] After discussing the difference between indemnity and subrogation, the court in Allstate then went on to distinguish Fireman's Fund as follows:

"Appellant relies heavily on Fireman's Fund Insurance Co. v. Rojas, 409 So.2d 1166 (Fla. 3d DCA 1982). At first appearance, that case would seem to control the disposition of the case sub judice. A close reading of the record in Fireman's Fund, however, reveals that the claim, from the language of the complaint to the briefs on appeal, was always treated as being one for indemnification because, as Fireman's Fund argued in its appellate briefs, the provisions of the Insurance Code then extant required that its claim be for indemnification and not for subrogation. Secondly, Fireman's Fund paid its insured promptly without waiting for the outcome of the lengthy litigation between Mrs. Rojas and her insurance carrier. Additionally, Fireman's Fund filed its complaint, albeit on the very last day, within the four year limitation period which began to run on the date of the accident. Finally, there is nothing in the record which suggests that there was a provision in the policy by which Fireman's Fund could require its insured to file suit against Mrs. Rojas in order to protect Fireman's Fund's interests."
Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d at 979-80 (footnote omitted).