Rel: 09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1130503
_____

**Pennsylvania National Mutual Casualty Insurance Company**

v.

**Michael S. Bradford**

**Appeal from Jackson Circuit Court**
**(CV-11-900138)**

MAIN, Justice.

Pennsylvania National Mutual Casualty Insurance Company ("Penn National") was sued by Jacob T. Walker, an employee of its named insured, seeking underinsured-motorist ("UIM") benefits following an automobile accident. After settling the

claims against it, Penn National filed a cross-claim against Michael S. Bradford, the alleged tortfeasor, asserting a subrogation theory of recovery. The trial court dismissed the cross-claim on the ground that it was barred by the statute of limitations, and Penn National appealed. We affirm the judgment of the trial court.

## I. Facts and Procedural History

On September 21, 2009, Walker was involved in an accident when the vehicle he was operating, a truck owned by his employer, collided with a vehicle being operated by Bradford. Bradford's vehicle was insured by GEICO Indemnity Company and carried a bodily-injury limit of $25,000 per person. On September 14, 2011, Walker sued Bradford and Penn National in the Jackson Circuit Court. The complaint alleged that the accident was caused by Bradford's negligent and/or wanton operation of his vehicle and that the accident caused Walker to sustain permanent injury and other damage. Walker also asserted a claim for UIM benefits against Penn National, the insurer who provided UIM coverage for the vehicle operated by Walker.

Before trial, Walker and Bradford reached a tentative settlement agreement pursuant to which Walker agreed to dismiss his claims against Bradford for $25,000, a sum representing the policy limits of Bradford's automobile-liability insurance with GEICO. Pursuant to the terms of his employer's insurance policy with Penn National, Walker notified Penn National of the proposed settlement agreement and requested Penn National's consent to the settlement and requested that Penn National waive its subrogation rights. Penn National declined to consent to the settlement and, under the guidelines set forth by this Court in Lambert v. State Farm Mutual Automobile Insurance Co., 576 So. 2d 160 (Ala. 1991), advanced the proposed $25,000 settlement amount to Walker in order to preserve its subrogation rights.

On June 21, 2013, Penn National and Walker settled Walker's UIM claim in the amount of $500,000 and filed a pro tanto stipulation of dismissal of Walker's claims against Penn National. Because Penn National did not consent to the proposed settlement between Walker and Bradford, Walker's claims against Bradford remained pending.

3

1130503

On July 2, 2013, prior to the entry of an order of dismissal of Penn National, Penn National filed a cross-claim against Bradford. The cross-claim asserted that Penn National was subrogated to the rights of Walker against Bradford and "assert[ed] against the tortfeasor, Michael Bradford, all of the causes of action alleged, or that could be alleged, against the tortfeasor by the plaintiff in this litigation." Bradford moved to dismiss the cross-claim on the ground that it was filed almost four years after the accident and thus was barred by the two-year statute of limitations. The trial court granted Bradford's motion to dismiss Penn National's cross-claim, specifically finding that the Penn National's direct claim against Bradford was barred by the statute of limitations.

On January 13, 2014, Penn National filed a motion to substitute Walker's counsel, who had been litigating the matter, with Penn National's counsel.[1] The trial court denied Penn National's motion to substitute counsel.

On May 16, 2014, the trial court certified its dismissal of Penn National's cross-claim as final under Rule 54(b), Ala.

---

[1]No motion to substitute Penn National as the party plaintiff and real party in interest has been filed.

4

1130503

R. Civ. P. Penn National appeals the dismissal of its cross-claim.[2]

## II. Standard of Review

"'The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So. 2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So. 2d 746 (Ala. Civ. App. 1991). In making this determination, the Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. Fontenot v. Bramlett, 470 So. 2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So. 2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garnett v. Hadden, 495 So. 2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So. 2d 768, 769 (Ala. 1986).'"

DGB, LLC v. Hinds, 55 So. 3d 218, 223 (Ala. 2010) (quoting Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993)).

_____

[2]Penn National also filed a separate appeal from the order of the trial court denying its motion to substitute counsel. On May 13, 2014, that appeal was dismissed as being from a nonfinal, nonappealable order Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Bradford (No. 1130568), ___ So. 3d ___ (Ala. 2014)(table). Accordingly, the issue as to whether the trial court properly denied the motion to substitute is not before us.

5

1130503

### III. Analysis

Penn National contends that the trial court erred in dismissing its subrogation cross-claim against Bradley on the ground that it was barred by the statute of limitations. We disagree.

Alabama follows "the well established rule that a subrogee can acquire no greater rights than those possessed by the principal whose rights he asserts." Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 607, 285 So. 2d 468, 472 (1973). Alabama, like most other jurisdictions, specifically applies this principle to the running of the statute of limitations. Home Ins., 291 Ala. at 607-08, 285 So. 2d at 472 ("[T]his court has specifically held this principle applicable to the running of the statute of limitations."). Thus, in a subrogation case, the statute of limitations begins to run when the cause of action accrues, and "the cause accrues as soon as the party in whose favor its arises is entitled to maintain an action thereon." 291 Ala. at 608, 285 So. 2d at 473.

In Hardin v. Metlife Auto & Home Ins. Co., 982 So. 2d 522 (Ala. Civ. App. 2007), the Court of Civil Appeals applied the

6

above principles to facts markedly similar to those in this case. Hardin arose out of a two-vehicle automobile accident that occurred in 2001. The Fotis were injured as a result of that accident, and they sued the operator of the other vehicle, Hardin, as well as their own uninsured-motorist carrier, Metlife. In 2004, the Fotis notified Metlife of their intention to settle their claims against Hardin. Metlife, in order to retain its subrogation rights, advanced the Fotis the amount of the proposed settlement. In 2005, Metlife settled the remainder of the Fotis' claims. In 2006, Metlife sued Hardin under a subrogation theory to recover the amounts it had paid as a result of the Fotis' action. The trial court denied Hardin's motion to dismiss based on the statute of limitations and granted Metlife's motion for a summary judgment. Hardin appealed.

On appeal, the Court of Civil Appeals reversed the summary judgment in favor of Metlife and, relying on Home Insurance, concluded that Metlife's subrogation claims were barred by the statute of limitations:

"In Home Insurance Co. v. Stuart-McCorkle, Inc., supra, our supreme court resolved the issue regarding when, in Alabama, the statute of limitations begins to run on a subrogated insurer's

7

1130503

> claim against the tortfeasor. ... Therefore, under the precedent of Home Ins. Co. v. Stuart-McCorkle, Inc., supra, the statute of limitations for Metlife to file its cause of action began to run on December 23, 2001, the date of the automobile accident that gave rise to the claims by the Fotis, Metlife's insureds."

982 So. 2d at 526-27. Because Metlife's action was not filed within the two-year limitations period, the Court of Civil Appeals held that Metlife's action was barred by the statute of limitations, and it reversed the trial court's summary judgment in favor of Metlife.

The present case is nearly indistinguishable from Hardin. Walker's automobile accident occurred on September 21, 2009. Based on the payments it has made in this case, Penn National asserts that it is subrogated to Walker's rights against Bradford arising from the 2009 accident. Penn National, however, did not file its cross-claim against Bradford until July 2, 2013, more than three years after the 2009 accident. Accordingly, Penn National's direct claims against Bradford are barred by the two-year statute of limitations.

Penn National argues that this result is "grossly inequitable" and urges us to overrule Hardin. We decline to do so. First, this result is compelled by the application of

8

long-established legal precedent. Other than asserting that the result in this case is inequitable, Penn National has failed to provide any basis compelling a departure from stare decisis. Further, Penn National exaggerates the purported inequities of the result in this case. Generally speaking, insurers need not file a direct action against the tortfeasor to protect their right of reimbursement. Rather, insurers generally may obtain reimbursement from the insured's recovery against the tortfeasor. See Ex parte State Farm Mut. Auto. Ins. Co., 118 So. 3d 699, 704 (Ala. 2012). Indeed, Penn National's own uninsured-motorist-coverage endorsement attached to the policy in this case contains the following provision: "If we make any payment and the 'insured' recovers from another party, the 'insured' shall hold the proceeds in trust for us and pay us back the amount we have paid."[3] Moreover, most insurance policies, including the Penn National policy here, impose a duty on the insured to cooperate with

---

[3]See Star Freight, Inc. v. Sheffield, 587 So. 2d 946, 958 (Ala. 1991) (holding that such subrogation and trust provisions apply only to recovery from the uninsured tortfeasor).

the insurer seeking to secure its subrogation rights.[4] Accordingly, we do not agree that insurers are unfairly prejudiced by the application of well settled precedent concerning the running of the statute of limitations in subrogation actions.[5] We cannot say the trial court erred in dismissing Penn National's direct claim against Bradford.

## IV. Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed.

AFFIRMED.

Moore, C.J., and Bryan, J., concur.

Murdock, J., concurs specially.

Bolin, J., concurs in the result.

---

[4]The policy provides, in part:

"Transfer Of Rights Of Recovery Against Other To Us.

"If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after 'accident' or 'loss' to impair them."

[5]Other courts have addressed similar arguments regarding the running of the statute of limitations in subrogation cases and rejected those arguments on the ground that insurers have ample methods to protect their subrogation interests. See American States Ins. Co. v. Williams, 151 Ind. App. 99, 107-08, 278 N.E.2d 295, 301 (1972); Sahloff v. Western Cas. & Sur. Co., 45 Wis. 2d 60, 70-71, 171 N.W.2d 914, 918 (1969).

1130503

MURDOCK, Justice (concurring specially).

> "'The general rule is that when an insurer pays the insured in accordance with the insurance contract for a loss of property proximately resulting from fire caused by the actionable misconduct of a third party, the insurer becomes, by the doctrine of equitable subrogation, the owner, pro tanto, of the claim of the insured against the third party.'"

McGuire v. Wilson, 372 So. 2d 1297, 1300 (Ala. 1979) (quoting City of Birmingham v. Walker, 267 Ala. 150, 154, 101 So. 2d 250, 252 (1958)). Indeed, the subrogation clause in Jacob Walker's employer's insurance policy with Penn National Mutual Casualty Insurance Company ("Penn National") expressly states:

> "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and do nothing after 'accident' or 'loss' to impair them."

Thus, as a result of its payment of insurance proceeds, Penn National has become the beneficial owner of "the claims" that have been filed by Walker against Michael S. Bradford and that remain pending in the trial court. As the main opinion holds, however, this does not necessarily mean that Penn National can file some new claim in its own name against Bradford after the statute of limitations has expired. Further, Penn National

11

has not attempted to substitute itself for Walker as the real party in interest in Walker's claims (or argued that its cross-claim should be treated as a motion for such substitution). I therefore concur in the main opinion.

The fact remains, however -- and I write separately to note -- that, because Penn National is now the beneficial owner of "the case" against Bradford, Penn National has the right to control the prosecution of that case, including the selection of counsel. The main opinion observes in a footnote that Penn National purported to file a separate appeal from an order of the trial court denying its motion to substitute counsel as to those claims but that this Court dismissed that purported appeal as being from a nonfinal, nonappealable order. Although the trial court subsequently purported to certify its order refusing to allow substitution of counsel as final and appealable under Rule 54(b), Ala. R. Civ. P., the appeal of that order already had been dismissed by this Court and, in any event, was not properly subject to such a certification because it did not conclusively adjudicate any substantive rights of the parties. See, e.g., Banyan Corp. v. Leithead, 41 So. 3d 51, 54 (Ala. 2009) (holding that the trial

12

1130503

court erred in certifying an order as a final, appealable judgment under Rule 54(b) because "the order ... did not completely dispose of any of the substantive claims in this case, nor did the order fully dispose of the claims as they relate to at least one party").[6] Furthermore, the briefs before us in the present proceeding focus solely on the issue of the dismissal of Penn National's cross-claim; therefore, there is nothing before this Court that could be treated as a petition for mandamus relief as to this issue.

---

[6]See also, e.g., <u>McCulloch v. Roberts</u>, 290 Ala. 303, 305, 276 So. 2d 425, 426 (1973) ("'The test of the finality of a decree sufficient to support an appeal is that it ascertains and declares the rights of the parties ....'" (quoting <u>Carter v. Mitchell</u>, 225 Ala. 287, 293, 142 So. 514, 519 (1932))); <u>Lunceford v. Monumental Life Ins. Co.</u>, 641 So. 2d 244, 246 (Ala. 1994) ("A final judgment is an order 'that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.'" (quoting <u>Bean v. Craig</u>, 557 So. 2d 1249, 1253 (Ala. 1990))); <u>State v. Brantley Land, L.L.C.</u>, 976 So. 2d 996, 999 (Ala. 2007) ("'"Only a fully adjudicated whole claim against a party may be certified under Rule 54(b)."'" (quoting <u>James v. Alabama Coalition for Equity, Inc.</u>, 713 So. 2d 937, 942 (Ala. 1997), quoting in turn <u>Sidag Aktiengesellschaft v. Smoked Foods Prods. Co.</u>, 813 F.2d 81, 84 (5th Cir. 1987) (emphasis omitted))); and <u>Haynes v. Alfa Fin. Corp.</u>, 730 So. 2d 178, 181 (Ala. 1999) ("[F]or a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party." (emphasis omitted)).