SHAW, Justice.
In these three matters, Allstate Property and Casualty Insurance Company ("Allstate") and GEICO Indemnity Company ("GEICO") separately petition this Court for a writ of mandamus. The petitions seek writs directing the Madison, Macon, and Jefferson Circuit Courts to vacate their respective orders purporting to allow separate parties who have underinsured-motorist ("UIM") insurance with Allstate or GEICO to enter into, without the applicable insurer's consent, settlement agreements with an alleged underinsured tortfeasor. In case no. 1150269, we dismiss the petition as untimely filed. In case no. 1150511 and case no. 1151266, we grant the petitions and issue the writs.
Facts and Procedural History
Each of these matters resulted from separate automobile accidents between either an Allstate or a GEICO insured with *201 UIM coverage and allegedly underinsured tortfeasors. In each case, it appears undisputed that the applicable insurance policy contained a "consent-to-settle" clause requiring the provision of notice to, and the consent of, the affected insurer prior to the insured's settlement of any claims against the alleged underinsured tortfeasors and/or a release of the tortfeasors' liability.
Case No. 1150269
On November 1, 2012, Elizabeth Rebecca Zajic filed in the Madison Circuit Court a complaint against Kimberly D. Payne, alleging that the two had been involved in an automobile accident on November 1, 2010, in which Payne had acted negligently and wantonly. Zajic also included a claim against her insurer, Allstate, seeking to recover UIM benefits. Thereafter, Payne's liability insurer offered to tender the entire $50,000 available under Payne's policy limits in exchange for a full release of Payne's liability.
Pursuant to the procedure outlined by this Court in Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160, 167 (Ala. 1991), Zajic notified Allstate of the settlement offer and sought its consent to settle. Allstate, however, declined to consent; instead, as also permitted by Lambert, Allstate opted to advance the $50,000 to Zajic. Allstate then opted out of participation in further proceedings determining Payne's liability and Zajic's damages.
Approximately 10 months after Allstate opted out, Payne filed a "Motion to Enforce Settlement and for Pro Tanto Dismissal of Defendant, Kimberly D. Payne." In her motion, Payne, citing Lambert, among other authorities, argued that "the only permissible reason for a UIM carrier to advance or front the tortfeasor's liability limits is to preserve subrogation." Payne, citing Pennsylvania National Mutual Casualty Insurance Co. v. Bradford, 164 So.3d 537 (Ala. 2014), and Hardin v. Metlife Auto & Home Insurance Co., 982 So.2d 522 (Ala. Civ. App. 2007), further argued that Allstate had, after advancing the money in Zajic's case, failed to file either a subrogation cross-claim or a separate action against Payne, and that the applicable statute of limitations had, by that time, expired on any such action. Thus, Payne contended:
"As [Zajic] originally reached a settlement agreement with ... Payne, to accept her policy limits of $50,000.00 and to release and dismiss ... Payne from [the] case, and because the only delay was an alleged subrogation claim by ... [Allstate] which no longer exists as a matter of law, the original settlement agreement ... should not be prevented from proceeding forward."
In response, Allstate argued, among other things, that, despite the expiration of the statute of limitations on direct actions it might have against Payne, under Bradford and pursuant to the terms of the policy, it retained certain reimbursement rights to any funds Zajic might obtain from Payne in excess of the liability policy.
After a hearing and over Allstate's objection, the trial court, on October 20, 2015, granted Payne's motion. More specifically, the trial court directed that the parties "effectuate the settlement" and submit appropriate pleadings seeking to dismiss the claims against Payne. In response, Allstate filed, on November 4, 2015, a motion requesting that the trial court "alter, amend, or vacate" its order. The trial court denied that motion by order entered the following day. Following the denial of its motion seeking relief from that order, Allstate filed the instant petition for a writ of mandamus on December 16, 2015.
Case No. 1150511
As the result of an automobile accident that occurred in Tuskegee on August 5, *202 2013, Danielle Carter sued, in the Macon Circuit Court, the alleged tortfeasor, Alvin Lee Walker. Carter's complaint also included a count against Allstate, her UIM insurer, pursuant to which Carter, who alleged that Walker was underinsured, sought to recover UIM benefits under her own policy. Walker's liability insurer subsequently made a $25,000 policy-limits offer to settle Carter's claims against Walker. Carter notified Allstate of the settlement offer; Allstate refused to consent to the settlement and, pursuant to the Lambert guidelines, instead elected to advance Carter $25,000. In addition, on May 12, 2014, Allstate obtained leave from the trial court to opt out of further participation in the litigation.
Over one year later, in September 2015, Walker filed a motion seeking "enforcement" of the original settlement offer and his dismissal from the action. In his motion, Walker noted that, despite the fact that "the only permissible reason for a UIM carrier to 'front' liability limits is to preserve subrogation," Allstate had not filed either a cross-claim or a separate subrogation action against him; thus, according to Walker, because the statute of limitations applicable to any such claim against him had expired with no action by Allstate, the settlement offer was due to be "enforced." Citing Bradford, Allstate responded that, although the statute of limitations might foreclose the right of a UIM insurer to maintain a direct action against the tortfeasor for recovery of amounts paid to its insured, the insurer had other means to seek reimbursement if the UIM insured obtained amounts from the tortfeasor in excess of the liability policy.
On January 7, 2016, the trial court ordered the parties to effectuate settlement of Carter's claims against Walker and dismissed Walker with prejudice. The trial court further noted: "The case will remain pending only against the underinsured motorist carrier, Allstate ...." Allstate responded with the instant petition for a writ of mandamus, which was filed on February 17, 2016.
Case No. 1151266
On October 22, 2013, Rasheena Harris-Williams was, while driving a vehicle insured under a policy issued by GEICO, injured as the result of an automobile accident in Birmingham. Harris-Williams filed, in the Jefferson Circuit Court, a complaint against the alleged tortfeasor, Frederick Chamberlin IV. The complaint did not name GEICO as a party. Thereafter, Harris-Williams placed GEICO on notice, in light of the amount of Chamberlin's policy limits, of her intent to also seek UIM benefits under the GEICO policy. Harris-Williams also notified GEICO that Chamberlin's insurer had extended a $25,000 policy-limits offer to settle her claims against Chamberlin in exchange for Chamberlin's dismissal and that bills related to her medical treatment already exceeded $20,000. Harris-Williams requested that GEICO consent to the settlement or advance funds in the amount of the settlement offer. GEICO declined to consent and, instead, remitted the requested amount, stating that it reserved its right of subrogation and to pursue reimbursement of the advanced settlement.
In May 2016, Harris-Williams amended her complaint to add GEICO as a named defendant and to formally assert a claim for UIM benefits. In June 2016, Chamberlin filed a motion seeking "enforcement" of the settlement offer to Harris-Williams and the dismissal of all claims against him. More specifically, Chamberlin argued, as in the above cases, that preservation of its subrogation rights was the only "permissible" reason for GEICO's decision and that, pursuant to Bradford and Hardin, supra, the two-year statute of limitations applicable *203 to any subrogation claim against him had expired without action by GEICO. Thus, according to Chamberlin, "[t]he settlement agreement is due to be enforced in its entirety and upon payment of $25,000.00 by [his insurer], [he was] due to be released and dismissed from this case, with prejudice." The trial court, over GEICO's claim that Bradford and Hardin concerned only the filing of "new actions" and were, thus, inapposite, granted, on August 2, 2016, Chamberlin's motion in all respects and dismissed Chamberlin as a defendant. Following the denial of its motion requesting that the trial court "reconsider" that decision, GEICO filed the instant petition for a writ of mandamus on September 13, 2016.
This Court subsequently ordered answers and briefs in all three cases and, considering that the issues presented are identical, has consolidated them for the purpose of writing a single opinion.
Standard of Review
As discussed in more detail below, in Lowe v. Nationwide Insurance Co., 521 So.2d 1309, 1310 (Ala. 1988), this Court "set out the rights of a UIM carrier when its insured is involved in litigation" as including the right to
" 'elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court).' "
Ex parte Geico Cas. Co., 58 So.3d 741, 743 (Ala. 2010) (quoting Lowe, 521 So.2d at 1310 ). In the instant cases, by attempting to enforce settlement agreements between the insureds and the alleged underinsured tortfeasors and dismissing the tortfeasors from these actions, the trial courts have left the UIM carriers as the sole defendants, regardless of their desire to opt out of participation at trial. It is well settled that "[a] petition for a writ of mandamus is the appropriate means for challenging a trial court's refusal to grant a UIM carrier the right to opt out of litigation pursuant to Lowe." 58 So.3d at 743. See also Ex parte Aetna Cas. & Sur. Co., 708 So.2d 156 (Ala. 1998) (issuing a writ of mandamus directing the trial court to set aside an order compelling a UIM insurer to participate at trial).
The standard for the issuance of the requested writs is also well settled:
" ' "Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala. 2000).'
" Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala. 2003)."
Ex parte Progressive Specialty Ins. Co., 31 So.3d 661, 663 (Ala. 2009).
Discussion
I. Timeliness
Although not raised by any of the parties to these proceedings, this Court must first consider whether these petitions were timely filed.
The Court of Civil Appeals in Ex parte Hoyt, 984 So.2d 424, 425-26 (Ala. Civ. App. 2007), explained:
" 'The presumptively reasonable time within which to file a petition for a writ *204 of mandamus is the time in which an appeal may be taken.' Norman v. Norman, 984 So.2d 427, 429 (Ala. Civ. App. 2007). In the present case, the petition was filed 68 days after the trial court had entered its order [challenged by the mandamus petition]. Accordingly, the petition was filed outside of the presumptively reasonable 42-day period. '[A] motion to [alter, amend, or vacate] [does] not work to extend that presumptively reasonable time within which the [petitioner] could have filed a petition for a writ of mandamus.' Norman, 984 So.2d at 429 ; see also Ex parte Onyx Waste Servs., 979 So.2d [833,] 834 [ (Ala. Civ. App. 2007) ]. ' "[U]nlike a postjudgment motion following a final judgment, a motion to reconsider an interlocutory order does not toll the presumptively reasonable time period that a party has to petition an appellate court for a writ of mandamus." ' Norman, 984 So.2d at 429 (quoting Ex parte Onyx Waste Servs., 979 So.2d at 834 ).
" 'When a petition for a writ of mandamus has not been filed within a presumptively reasonable time, the petition "shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time." Rule 21(a)(3), Ala. R. App. P. "The filing of such a statement in support of an untimely petition for a writ of mandamus is mandatory." Ex parte Fiber Transp., L.L.C., 902 So.2d 98, 100 (Ala. Civ. App. 2004) (citing Ex parte Pelham Tank Lines, Inc., 898 So.2d 733, 736 (Ala. 2004), and Ex parte Troutman Sanders[, LLP], 866 So.2d [547,] at 550 [ (Ala. 2003) ] ).'
" Ex parte Onyx Waste Servs., 979 So.2d at 835.
"The petitioner in this case did not include a 'statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time.' Rule 21(a)(3), Ala. R. App. P. 'Therefore, because the petition was not filed within a presumptively reasonable time and no statement constituting good cause for this court to consider the petition was filed, we must dismiss the petition.' Ex parte Onyx Waste Servs., 979 So.2d at 835."
984 So.2d at 424-25. See Ex parte Troutman Sanders, LLP, 866 So.2d 547, 549-50 (Ala. 2003) (noting that the effect of a Rule 59(e), Ala. R. Civ. P., motion in tolling the time to file an appeal is applicable to final judgments and holding that a motion to reconsider a nonfinal, interlocutory order does not toll the time for filing a petition for a writ of mandamus seeking review of such order).
In case no. 1150269, as in Hoyt, Allstate filed its petition more than 42 days after the trial court had entered the order purporting to grant Payne's motion seeking to "enforce" the settlement agreement. In fact, Allstate's petition was filed on the 57th day following entry of that order. As was true in Hoyt, Allstate's motion to alter, amend, or vacate that interlocutory order did not toll the time for filing a petition for writ of mandamus in this Court. In addition, the petition does not include, as contemplated by Rule 21(a)(3), Ala. R. App. P., a statement explaining Allstate's failure to file the petition within the 42-day period contemplated by that rule. In consideration of those circumstances, the petition was not filed within the presumptively reasonable time; therefore, it is due to be dismissed. See Hoyt, supra ; Troutman Sanders, 866 So.2d at 549.
*205 In case no. 1150511 and case no. 1151266, both petitions were timely filed within 42 days of the trial court's orders purporting to enforce the settlement agreements.[1] Those matters are, thus, properly before this Court.
II. Case No. 1150511 and Case No. 1151266
In Lowe, the Court considered the following question of first impression: "Whether an insured may file a claim for underinsured motorist coverage against his or her own insurer in the same lawsuit with the insured's claim against the alleged underinsured motorist ...." 521 So.2d at 1309. We noted:
"Three separate, underlying considerations are essential to our disposition of this first-impression case: 1) that of protecting the right of the insurer to know of, and participate in, the suit; 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit ...; and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance ...."
Id. This Court ultimately held that all the foregoing concerns were accommodated by the following procedure:
"A plaintiff is allowed either to join as a party defendant his own liability insurer in a suit against the underinsured motorist or merely to give it notice of the filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder's decisions on the issues of liability and damages. If the insurer is not joined but merely is given notice of the filing of the action, it can decide either to intervene or to stay out of the case."
521 So.2d at 1310.
Subsequently, in Lambert, the Court considered "the right of an insured to settle with a tort-feasor, and to give the tort-feasor a complete release without getting the consent of the insured's carrier of underinsured motorist coverage to the settlement." 576 So.2d at 161. Noting "the 'twilight zone' that [an insured] is placed in when the underinsured motorist insurance carrier does not want to give its consent to settle, or wants to protect its subrogation rights," Lambert"attempt[ed] to provide a road map for everyone concerned to follow." 576 So.2d at 165. That "road map" included the following "general rules":
"(1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.
"(2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the *206 insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
"(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
"(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.
"(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tort-feasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tort-feasor's insurer.
"(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer."
576 So.2d at 167. Finally, Lambert explained that the foregoing
"guidelines should be applied with the understanding that the purpose of consent-to-settle clauses in the uninsured/underinsured motorist insurance context is to protect the underinsured motorist insurance carrier's subrogation rights against the tort-feasor, as well as to protect the carrier against the possibility of collusion between its insured and the tortfeasor's liability insurer at the carrier's expense."
Id.
In these two remaining petitions, Allstate and GEICO (hereinafter collectively referred to as "the insurers") contend that they are entitled to mandamus relief on the ground that they, in all respects, complied with the procedural requirements established by this Court in Lowe and in Lambert, supra, and that they, therefore, possessed a clear legal right to have their liability to pay UIM benefits, if any, determined by a jury whose verdict would not be influenced by evidence of insurance coverage. According to the insurers, the trial courts' actions in ordering the subject settlements to be enforced over their objections, and the tortfeasors to be dismissed, thus leaving the insurers as the only remaining defendants, deprived them of that right. The respondents counter that, contrary to the insurers' claims, the trial courts' actions did not deprive the insurers of any legal right because, at the time the settlements were enforced, the insurers' subrogation claims *207 against the tortfeasors had been extinguished by the expiration of the applicable limitations period-a claim that, at least according to Walker, is "the practical and logical result of this Court's decision in Bradford." (Case no. 1150511, Walker's answer, at p. 8.) We disagree.
It is undisputed that, at all times pertinent hereto, the insurers complied, to the very "letter of the law," with the Court's dictates in Lowe and Lambert, as set out above. Specifically, Allstate and GEICO, after receiving notice of a settlement offer but declining to consent, which right was secured by the respective contracts between the insurers and their insureds, properly advanced an amount equal to the tortfeasor's respective settlement offer. Further, Allstate ultimately exercised the available option of opting out of further participation in the litigation[2] in order to prevent mention of "its potential involvement." Despite that compliance, the actions of the trial courts in attempting to order that the settlements be effected and the tortfeasors dismissed have essentially nullified the insurers' legal right both to withhold consent to settlement and to opt out of further proceedings. In essence, despite the insurers' payment of the funds necessary to enjoin the insureds' consummation of the tortfeasors' offered settlements, the insurers were, nonetheless, ultimately forced to accept the exact settlement to which they had previously declined to consent. Further, as a result of the trial courts' attempted dismissal of the tortfeasors, the insurers-each of which would be the sole remaining defendant in each case-are being denied the right to opt out of further proceedings and to avoid mention of their involvement in the case.[3]
The respondents argue that this circumstance resulted from the insurers' own inaction, namely, the failure of the insurers to timely file either cross-claims or separate subrogation actions against the tortfeasors. More specifically, citing Bradford and Hardin, it is contended that once the statute of limitations on a direct subrogation action by the insurers against the tortfeasors has expired, "[t]here would be no viable legal means by which the [insurers] could collect against the [tortfeasors]." (Case no. 1151266, Chamberlin's answer, at p. 10.) As this Court recently explained in Bradford, however, "insurers need not file a direct action against the tortfeasor to protect their rights of reimbursement ... [but] may obtain reimbursement from the insured's recovery against the tortfeasor." 164 So.3d at 540.[4] Indeed, as Justice Murdock *208 noted in his special concurrence in Bradford, having advanced the tortfeasor's policy limits to its insured, "[the insurer] is now the beneficial owner of 'the case' against [the tortfeasor]," and, as such, "has the right to control the prosecution of that case." 164 So.3d at 541 (Murdock, J., concurring specially). Thus, it is of no consequence that the timing for filing a direct action by the insurers against the tortfeasors has expired. The respondents correctly point to Bradford, 164 So.3d at 539, Hardin, 982 So.2d at 526, and related authorities as establishing that the statute of limitations begins to run against a subrogated insurer at the same time it begins to run against the insured. See also Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 607-08, 285 So.2d 468, 472-73 (1973). However, that well settled principle is clearly applicable only insofar as it prevents an insurer from "fil[ing] some new claim in its own name against [the tortfeasor] after the statute of limitations has expired." Bradford, 164 So.3d at 541 (Murdock, J., concurring specially) (emphasis added).[5]
As noted in Lambert:
"This Court has held that the insurer's duty to defend is more extensive than its duty to pay. See Universal Underwriters Ins. Co. v. Youngblood, 549 So.2d 76 (Ala. 1989) ; United States Fidelity & Guar. Co. v. Armstrong, 479 So.2d 1164 (Ala. 1985) ; and Samply v. Integrity Ins. Co., 476 So.2d 79 (Ala. 1985). Therefore, the liability insurer's duty to defend the tort-feasor could extend beyond that moment when the underinsured motorist insurance carrier elected to pay to its insured the amount offered by the tort-feasor's liability insurer."
576 So.2d at 167-68.
Because the insurers, in following the express directives of this Court, have been deprived of their contractual rights as well as the benefit of the procedures set forth in Lowe and Lambert, we conclude that they have demonstrated a clear legal right to the requested relief. We, therefore, in case no. 1150511 and case no. 1151266, direct the applicable circuit court to vacate its respective order purporting both to "enforce" the pro tanto settlement agreements against the insurer's consent and to dismiss the tortfeasors.
1150269-PETITION DISMISSED.
Stuart, C.J., and Bolin, Parker, Main, Wise, and Bryan, JJ., concur.
Murdock, J., dissents.
1150511-PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Murdock, Main, Wise, and Bryan, JJ., concur.
1151266-PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Murdock, Main, Wise, and Bryan, JJ., concur.

As noted above, GEICO filed a motion to reconsider, but nevertheless filed its petition within 42 days of the trial court's order purporting to grant the motion to enforce the settlement.

There appears to be no suggestion that, in any of the three cases, the consent of the respective insurer was unreasonably withheld or that Allstate did not "opt out" within a reasonable time.

GEICO was added as a defendant in May 2016, and Chamberlin's motion seeking "enforcement" of the settlement offer was made the next month. Thus, it does not appear that GEICO had yet had the opportunity to "opt out" of the proceedings within a reasonable time. See Ex parte Electric Ins. Co., 164 So.3d 529, 531 (Ala. 2014) (holding that an insurer's decision to opt out, which was nearly two years after the complaint was filed and after participation in discovery, was made within a reasonable time), and Ex parte Edgar, 543 So.2d 682, 685 (Ala. 1989) ("Logically, the insurer would not want to withdraw from the case too early, before it could determine, through the discovery process, whether it would be in its best interest to do so."). The trial court's order essentially denies GEICO the ability to do so, despite the fact that GEICO has complied with the procedures in Lowe and Lambert.

GEICO was not made a party in the action until after the applicable limitations period had expired. Additionally, in case no. 1150269, which we are dismissing as untimely filed, Zajic's complaint against Payne and Allstate was filed the day the statute of limitations expired, making it virtually impossible for Allstate to file a timely direct subrogation action against Payne.

We are likewise unpersuaded by Chamberlin's claim that mere " 'fronting' of the settlement money did not create a vehicle for actual subrogation recovery" but, instead, that "the additional step of a timely Crossclaim or a timely separate lawsuit is necessary." (Case no. 1151266, Chamberlin's answer, at p. 9.) Notably, Chamberlin includes no citation to authority in support of that contention, which appears to be directly contradicted by Bradford and the authority cited therein.